IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| TRADING PLACES INTERNATIONAL, LLC, ) ) ) | |
| Plaintiff; ) ) | |
| vs. ) ) | Case No. _____ |
| SUMMERWINDS RESORT SERVICES, LLC, and ) ) ) ) | |
| *Serve Registered Agent:* ) Joshua Neally ) 3179 N. Gretna Rd. ) Branson, MO 65616 ) ) | |
| STORMY POINT VILLAGE – PHASE III ) PROPERTY OWNERS ASSOCIATION, ) INC., ) ) | |
| *Serve Registered Agent:* ) Joshua Neally ) 3179 N. Gretna Rd. ) Branson, MO 65616 ) ) | |
| Defendants. ) | |

## COMPLAINT

COMES NOW Plaintiff, Trading Places International, LLC, by and through counsel, and for its Complaint against Defendants Summerwinds Resort Services, LLC, and Stormy Point Village – Phase III Property Owners Association, Inc., alleges and states as follows:

### Parties

1. Plaintiff Trading Places International, LLC ("TPI") is a California limited liability company with a principal place of business in the State of California, which is in good standing and registered to do business in the State of Missouri.

2. Defendant Summerwinds Resort Services, LLC ("Summerwinds") is, upon information and belief, a Missouri limited liability company duly organized and existing by virtue of Missouri law, with its principal place of business in Branson, Taney County, Missouri.

3. Defendant Stormy Point Village – Phase III Property Owners Association, Inc. ("the Association") is, upon information and belief, a nonprofit corporation duly organized and existing by virtue of Missouri law, with its principal place of business in Branson, Taney County, Missouri.

4. Service to both Summerwinds and the Association may be affected by service upon their mutual registered agent, Joshua Neally, 3179 N. Gretna Rd., Branson, MO 65616.

**Jurisdiction And Venue**

5. This is an action for declaratory relief and, alternatively, anticipatory breach of contract and tortious interference, between citizens of different states.

6. This Court has subject-matter jurisdiction of this action under 28 U.S.C. § 1332, in that there is complete diversity of citizenship between adverse parties, and the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

7. Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(1), in that all defendants are residents of the State in which this district is located, and one or more defendants reside within this district.

8. Venue in this district is also proper under 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claims here asserted occurred in this judicial district.

9. Venue is further appropriate in the Southern Division of the United States District Court for the Western District of Missouri, under L.R. 3.1(a)(3) and L.R. 3.1(b)(2).

## Generally Applicable Facts

### A. The Agreements at Issue

10. Stormy Point Village Resort is a timeshare resort located in Branson, Missouri.

11. On December 12, 2007, TPI and the Association executed an agreement providing for Stormy Point's inclusion as an "Affiliated Resort" in TPI's Premier Access Program. (*See* the Premier Access Resort Affiliation Agreement, ("Premier Access Agreement") attached as Exhibit A.)

12. TPI's Premier Access Program provides, among other things, a means for owners of timeshare intervals at Affiliated Resorts to reserve the use and occupancy privileges at other Affiliated Resorts . (*See* Exhibit A.)

13. The Premier Access Agreement provided for an initial term of five years from the date of its execution. (*See* Exhibit A ¶5.1)

14. Contemporaneous with the Premier Access Agreement, TPI and the Association also negotiated and entered in a Management Agreement, executed on January 1, 2008. (*See* Management Agreement attached as Exhibit B.)

15. The Management Agreement provides, as the first of its Terms and Conditions, for the Association's engagement of TPI as the "exclusive managing agent" for Stormy Point Village Resort. (*See* Exhibit B ¶1.)

16. The Management Agreement provided for TPI's exclusive management of Stormy Point an initial term of five years, commencing on its date of execution, with automatic renewal for successive five-year terms thereafter. (*See* Exhibit B ¶ 3.1.)

17. The initial term of the Premier Access Agreement was originally set to run through approximately December 7, 2012. (*See* Exhibit A ¶ 5.1.)

18. The initial term of the Management Agreement was originally set to run through approximately January 1, 2013. (*See* Exhibit B ¶ 3.1.)

19. On July 20, 2010, TPI and Summerwinds executed an Amended and Restated Sub-Management Agreement (the "Sub-Management Agreement), which purported to amend and restate the January 2008 Management Agreement. (*See* Sub-Management Agreement, attached as Exhibit C.)

20. The Sub-Management Agreement acknowledges the engagement of TPI as the "exclusive managing agent" for Stormy Point Village Resort. (*See* Exhibit C ¶1.)

21. The Sub-Management Agreement provided for the extension of the initial five-year term of TPI's management of Stormy Point Village Resort, for a five-year term commencing on the date of the Sub-Management Agreement's execution. (*See* Exhibit C ¶3.1.a.)

22. In August of 2012, with less than six months remaining of the initial term of the Premier Access Agreement, TPI was critically evaluating its continued offering of the Premier Access Program's benefits and services, and contemplated declining the renewal of the Premier Access Agreement for an additional term.

23. In August of 2012, Summerwinds—by and through its agent and representative, Darren Abbot—approached TPI with a proposal to amend the Premier Access Agreement to extend the offering of its benefits and services through 2014.

24. As a material inducement to the extension of the Premier Access Agreement, Summerwinds offered to TPI an extension of the Management Agreement.

25. Relying on Summerwinds' promised extension of the Management Agreement, TPI assented to the extension of the Premier Access Agreement.

26. Accordingly, on November 25, 2012, TPI and the Association executed a two-page amendment to the Management Agreement, which expressly provided that "[t]he current operative term of the Agreement [wa]s hereby extended to December 31, 2017." (*See* Amendment to Management Agreement, attached as Exhibit D, at ¶1.)

27. On November 27, 2012, TPI, the Association, and VPG executed a three-page amendment to the Premier Access Agreement, which expressly provided for the term of the Premier Access Agreement to "expire on December 31, 2014, unless terminated sooner . . . or extended by mutual agreement of the Parties." (*See* Amendment to Premier Access Resort Affiliation Agreement, attached as Exhibit E.)

### B. *The Dispute and Threatened Merger*

28. On January 9, 2015, Summerwinds—by and through its President, Patrick Joyce—sent a letter to TPI stating that the Sub-Management Agreement "will not be renewed and shall be deemed terminated upon its expiration as of July 19, 2015." (*See* January 9 Letter attached as Exhibit F.)

29. The January 9 Letter indicated that a copy was sent to counsel for Summerwinds and the Association, Mr. Heartsill Ragon III. (*See* Exhibit F.)

30. On January 12, 2015, TPI's Senior Vice President and General Counsel, Victoria J. Kincke, sent a letter to Mr. Ragon regarding a number of ongoing issues between TPI and Summerwinds, including the January 9 Letter. (*See* January 12 Letter, attached as Exhibit G.)

31. In that January 12 letter, Ms. Kincke disputed Mr. Joyce's purported notice of nonrenewal, and expressly noted that the Management Agreement, "at Mr. Joyce's request and with his full knowledge, was amended in November 2012 to extend its current term through December 2017." (*See* Exhibit G p.1.)

32. Despite Ms. Kincke's January 12 letter, Summerwinds and the Association have refused to acknowledge the agreed-to extension of TPI's management of Stormy Point Village Resort, which runs through December 31, 2017, under the express terms of the Amendment to Management Agreement (Exhibit D).

33. Summerwinds and the Association are actively engaged in efforts to deprive TPI of its rights under the Management Agreement, and to exclude and eliminate TPI's management of the Stormy Point Village Resort.

34. Such efforts include the orchestration of a proposed "merger of the Association and the Stormy Point Village Association, with the Association being the Survivor thereof." (*See* Materials Sent to Owners, attached as Exhibit H, p.2.)

35. This threatened merger would interfere with, or prevent altogether, TPI's continued management of the Stormy Point Village Resort under the terms of the Management Agreement.

36. The threatened merger has been specifically endorsed by the Association to its members, by a letter declaring that "[t]he Association Board of Directors strongly suggests that you **vote in favor of** this merger." (Exhibit H p.1, emphasis in original.)

37. Documents for effectuating the threatened merger have been prepared and distributed to members of the Association. (*See* Plan of Merger, Exhibit H p.4–6.)

38. Mr. Joyce, Summerwinds' President, has informed senior executives of TPI's parent companies that the merger is designed to exclude and prevent TPI from its continued management of the Stormy Point Village Resort.

39. The threatened merger is scheduled to be voted on by the member of the Association at its annual meeting, which is scheduled to begin on **Tuesday, March 3, 2015**, at **8:30 A.M.**

## COUNT I: DECLARATORY JUDGMENT AGAINST BOTH DEFENDANTS
### Under 28 U.S.C. § 2201 et seq.

40. TPI incorporates by reference, as if fully stated herein, the allegations in Paragraphs 1–39 of this Complaint.

41. A justiciable controversy exists between TPI and Defendants concerning its rights under the Management Agreement, which are threatened by the actions and conduct of Defendants.

42. Defendants have attempted to prevent TPI from performing management functions under the Management Agreement and are engaged in a consistent and continual pattern of attempting to prevent TPI's performance of its ongoing duties under the Management Agreement.

43. The controversy concerning TPI's rights under the Management agreement are ripe for determination, in that Defendants have disputed and denied TPI's, contractual rights and threatened to interfere with its business activities and relationships, as described more fully above, with a proposed merger of the Association affecting TPI's rights to be voted upon imminently.

44. Defendants' actions and threatened actions materially affect TPI's legally protected pecuniary interests and business relationships, and jeopardize gross revenues in excess of approximately $3,000,000.00.

45. TPI has no adequate remedy at law.

46. TPI accordingly seeks relief from this Court in the form of a declaration of TPI's existing and ongoing contractual rights to management of the Stormy Point Village Resort under the Management Agreement.

47. A declaration in favor of TPI is warranted to protect TPI from immediate and injury as a result of Defendants' actions and threatened actions.

48. Further necessary and proper relief based on such a declaratory judgment or degree may also be necessary to the effectuating of such a declaration, and such relief is hereby requested under 28 U.S.C. § 2202.

49. The Management Agreement expressly provides for the recovery of attorneys' fees and costs in claims arising out of or relating to it. (*See* Exhibit B ¶13.)

WHEREFORE, Plaintiff TPI respectfully requests that the Court determine the rights and relations of the parties concerning TPI's rights under the Management Agreement under 28 U.S.C. § 2201 and enter a declaration of rights in favor of TPI; issue appropriate injunctive or other relief against Defendants under 28 U.S.C. § 2202; grant to TPI an award of its costs and attorneys' fees; and grant such other and further relief at the Court deems just and proper under the circumstances.

### COUNT II: ANTICIPATORY BREACH OF CONTRACT
**Against the Association (In the alternative to Count I)**

50. TPI incorporate by reference, as if fully stated herein, the allegations in Paragraphs 1–39 of this Complaint.

51. The Management Agreement, as amended, constitutes a valid and enforceable contract between TPI and the Association.

52. Under the terms of that contract, TPI is entitled to fulfill its term as manager for Stormy Point Village Resort through at least December 31, 2017.

53. The Association has, without justification, manifested a positive intention to breach its contract with TPI by its express statements and conduct, described above.

54. As a result of the Association's anticipatory breach, TPI will suffer, through the loss of revenues, damages in an amount exceeding approximately three million dollars ($3,000,000.00).

55. The contract expressly provides for the recovery of attorneys' fees and costs in claims arising out of or relating to it. (*See* Exhibit B ¶13.)

WHEREFORE, Plaintiff TPI respectfully requests that the Court enter judgment in its favor against the Association in a principal amount exceeding three million dollars ($3,000,000.00), plus its costs and attorneys' fees, and for such other and further relief at the Court deems just and proper under the circumstances.

### COUNT III: TORTIOUS INTERFERENCE
**Against Summerwinds (In the alternative to Count I)**

56. TPI incorporates by reference, as if fully stated herein, the allegations in Paragraphs 1–39 and 50–55 of this Complaint.

57. The Management Agreement, as amended, constitutes a valid and enforceable contract between TPI and the Association.

58. TPI has a business relationship with the Association.

59. Defendant Summerwinds has knowledge of the contract and business relationship between TPI and the Association.

60. Summerwinds has, by its statements and conduct described above, intentionally interfered with TPI's contractual rights and business relationship with the Association.

61. Summerwinds' intentional interference is without justification.

62. As a result of Summerwinds' intentional interference, TPI has suffered damage and will continue to suffer damages, in an amount in excess of three million dollars ($3,000,000.00).

WHEREFORE, Plaintiff TPI respectfully requests that the Court enter judgment in its favor against Summerwinds in a principal amount exceeding three million dollars ($3,000,000.00), plus its costs and attorneys' fees, and for such other and further relief at the Court deems just and proper under the circumstances.

> Respectfully Submitted,
>
> LATHROP & GAGE LLP
>
>
> By: */s/ James E. Meadows*
> James E. Meadows    #50874
> Joshua B. Christensen    #63759
> 910 E. St. Louis, Suite 100
> Springfield, MO 65806
> (417) 886-2000  FAX: 886-9126
> jmeadows@lathropgage.com
> jchristensen@lathropgage.com
> *Attorneys for Plaintiff TPI*