

Via Email (ragon@gill-law.com)
Hard Copy to Follow Regular Mail

January 12, 2015

Heartsill Ragon, III
Gill Ragon Owen
425 W. Capitol Ave., Ste 3801
Little Rock, AR 72201

Dear Mr. Ragon,

I have been requested to contact you regarding a number of ongoing issues between my client, Trading Places International, LLC ("TPI"), and parties who appear to be your clients – namely, Summerwinds Resort Services, LLC, VPG IV, LLC and their respective affiliated companies (collectively, "Summerwinds") and Stormy Point Village – Phase III Property Owners Association (the "Association").

Most importantly, we have been informed by Tom Newman that it is the belief of Summerwinds that TPI's management responsibilities at the Stormy Point Village Resort ("SPV") conclude in July 2015, based on Summerwinds' reliance on a purported Amended and Restated Sub-Management Agreement entered into between TPI and Summerwinds in July 2010 (the "Sub-Management Agreement"). In fact, TPI has been issued a non-renewal notice under such agreement.

This Sub-Management Agreement purports to amend and restate an earlier Management Agreement which was entered into between Summerwinds and TPI in January 2008, which, at Mr. Joyce's request and with his full knowledge, was amended in November 2012 to extend its current term through December 2017. While TPI appreciates that it is now convenient for Summerwinds to rely on the terms of the Sub-Management Agreement, as they are more favorable to Summerwinds' current objectives, to do so, ignores the parties' clear intent to extend the term of TPI's management of SPV through 2017 as is evidenced by their mutual execution of a Management Agreement amendment in November 2012.

It is TPI's position that, notwithstanding the existence of any Sub-Management Agreement, the Management Agreement itself and the parties' course of dealing – including, in particular, past and recent behavior by Mr. Joyce himself, will support a

determination that the parties intended, and contracted for, TPI's management of this resort to run through December 31, 2017.

In August 2012, Summerwinds representative, Darren Abbott, contacted TPI regarding an amendment of the Premier Access Resort Affiliation Agreement (the "PA Agreement"), an amendment which Summerwinds was actively seeking so as to ensure its opportunity to continue to offer the Premier Access program at SPV (and the David Walley's Resort) through 2014. At the time, TPI was critically evaluating its continued offering of the Premier Access program and was uncertain as to whether to further extend its obligation to offer the program's benefits and services. Summerwinds knew this and offered TPI the extension of the Management Agreement as a material inducement to TPI's agreement to amend the PA Agreement. To further solidify the availability of Premier Access for SPV owners, Summerwinds required TPI to include the following language in the PA Agreement amendment:

Notwithstanding the termination or expiration of this [PA] Agreement, TPI, provided that it remains the managing agent for the Subject Resort, agrees to continue, until December 31, 2017, to offer Premier Access membership to those Premier Access Members at the Subject Resort who became Premier Access Members prior to the termination or expiration of this [PA] Agreement and elect to continue their memberships directly with TPI following such termination or expiration of this [PA] Agreement. All such memberships will be governed by the terms set forth in TPI's then-current Disclosure Statement.

Mr. Joyce's execution of the PA Agreement amendment including this language suggests that Mr. Joyce, as authorized representative of the Association, clearly intended that TPI's management of the Association would continue through December 31, 2017. The fact that Mr. Joyce executed an amendment to the Management Agreement, rather than the Sub-Management Agreement, for this purpose evidences that he thought this approach was appropriate. To assert otherwise would suggest that Mr. Joyce purposely engaged in conduct to deceitfully induce TPI into entering into the amendment of the PA Agreement.

Further, when Mr. Joyce visited the offices of ILG and Interval International in December 2014, he repeatedly stated that the fees set forth in the Management Agreement were too favorable to TPI and needed to be renegotiated or, in the alternative, ILG should offer Summerwinds the opportunity to "buy out" of the Management Agreement's remaining term in a discounted amount, payable in installments. Mr. Joyce also suggested he would pay TPI its management fees, if necessary, but he would not allow it to continue to provide services. This doesn't seem like the conduct of an executive who believes TPI's management of SPV is scheduled to expire in July 2015. Rather, such conduct is more consistent with a man who has reaped the benefits of the PA Agreement's amendment, but now regrets his agreement to extend the term of the Management Agreement through December 31, 2017 as consideration for TPI's agreement to amend the PA Agreement. Now that ILG has declined to offer

Summerwinds's requested buy-out of TPI's Management Agreement and simply stated that both parties should comply with their obligations under it *unless and until* an alternative approach can be mutually agreed to by all of the relevant parties, Mr. Joyce and Summerwinds conveniently point to the Sub-Management Agreement as the operative agreement governing TPI's management of SPV. TPI refuses to accede to Summerwinds' position and, accordingly, TPI intends to fully comply with its obligations under the Management Agreement and anticipates that the Association will do likewise without interference from Summerwinds or others. **Please accept this letter as TPI's formal dispute of the Summerwinds' January 9, 2015 notice of non-renewal of the Sub-Management Agreement.** For the reasons set forth herein, TPI views the term of the Sub-Management Agreement as irrelevant to its management of SPV.

It is my understanding that Mr. Joyce has forewarned ILG representatives that Summerwinds may attempt to interfere with TPI's management of SPV under the Management Agreement by purposefully bankrupting the Association or somehow collapsing it and the property's other associations into one surviving association for the purposes of voiding the Management Agreement. Please be advised that any such interference will be met with swift and strong resistance from TPI. TPI will take whatever actions necessary to preserve and protect its interests to provide management services to SPV under the Management Agreement.

Because of the circumstances described above, Mr. Rich Dowdell's December 29th letter has been referred to my office for review and response. Please be advised that Trading Places International will not be proceeding with the transfer of SPV owners data transfer from TPI's TSW portal to the Summerwinds' TSW portal, as requested. Given TPI's intention of continuing to service the SPV owners for the term of the Management Agreement, TPI will be required to access the SPV owner data, which it chooses to do through its own TSW portal for efficiency purposes.

Additionally, TPI desires to advise the Association and Summerwinds that it intends to comply with its obligations under the Premier Access Affiliation Agreement, as amended, which requires TPI to continue to provide Premier Access membership to existing owner members through December 31, 2017, based on TPI's continued management of the property through 2017. TPI has been informing existing owner members who are contacting TPI desiring to exercise their Premier Access membership rights of their opportunity to renew directly with TPI so as to continue to enjoy Premier Access' benefits and services in accordance with standard program terms and practices. TPI will continue such communications with existing owner members as it deems appropriate.

Further, I had been advised that Summerwinds has an outstanding balance of $117,461.86, approximately 30% of which is 120 days or more past due pursuant to its fulfillment of its Premier Access obligations. We request that Summerwinds bring its balance current by remitting this amount, in full, within five (5) business days of your receipt of this letter.

Finally, it has been reported that Mr. Joyce and other members of the Summerwinds team have repeatedly made defamatory comments regarding TPI's performance at the property. The most recent of these allegations relates to a purported accounting error which caused Summerwinds to incur significant additional fees. TPI stands behind the services it has provided to the Association in management of SPV and is unaware of any facts which would support a determination that TPI acted "unlawfully", in error or otherwise inappropriately. Under these circumstances, TPI demands that Summerwinds and its representatives immediately cease and desist from making further statements that negatively impact TPI's reputation or, if Summerwinds has good faith concerns regarding TPI's management practices, details of such practices and the manner in which they are deemed in error, unlawful or otherwise inappropriate should be provided so that TPI can initiate its review of such matters.

TPI appreciates receiving any further thoughts you may have regarding these matters so that TPI and Summerwinds can clarify any open issues and work cooperatively during the remaining term of TPI's management of the Association. I can be reached at (305) 925-7067 or at victoria.kincke@iilg.com.

Thank you for your attention to this matter.

Very truly yours,

*[signature]*

Victoria J. Kincke
Senior Vice President and General Counsel


cc: Loren Gallagher