

## A Letter to the Members of
## Stormy Point Village-Phase III Property Owners Association Inc.

Dear Member:

In accordance with the provisions of the Association bylaws, attached please find a notice designating the time and place at which the annual membership meeting of the Association shall take place. Additionally, you'll find attached a **proxy** pursuant to which you may designate an agent to cast your vote in the lieu of your attendance at the meeting.

This year's meeting will address one extraordinary issue. Historically, Stormy Point Village Resort has been operated and administered to separate property owners associations. These two associations perform parallel functions, but with duplicative and unnecessary expenses (accounting, personnel, general and administrative, etc). This year, the Association membership will be asked to approve the merger of these two associations into a single not-for-profit corporation. This proposed merger will have no visible impact upon the operation of your resort or the quality of services provided. Simply, this merger will allow management to avoid unnecessary expenses thereby stabilizing your maintenance fees.

The Association Board of Directors strongly suggests that you **vote in favor of** this merger. Again, expenses will be saved without any disruption whatsoever to the high-quality in which your resort has been operated.

Please don't hesitate contact us with any comments or questions that you might have.

**YOUR PROXY HAS BEEN PROVIDED WITH PRE-STAMPED POSTAGE AND EASY RETURN CARD.**
PLEASE RETURN YOUR PROXY WITHIN ONE DAY OF ITS RECEIPT WITH THE PREPAID CARD TO INSURE THAT YOUR VOTE IS COUNTED.

Sincerely years,

Stormy Point Village – Phase III
Board of Directors



# NOTICE OF ANNUAL MEETING
# OF THE MEMBERSHIP
# OF
# STORMY POINT VILLAGE—PHASE III PROPERTY OWNERS ASSOCIATION, INC.

In accordance with the Bylaws of the Association notice is hereby given to all members that the regularly scheduled annual meeting of Association will be convened at 8:30 a.m. at the resort clubhouse 201 Old Harbor Lane in Branson, Missouri for the purpose of (a) conducting annual business matters, (b) approving the merger of the Association and the Stormy Point Village Association, with the Association being the survivor thereof.

You may attend the special meeting either in person or by proxy. A form of proxy is attached hereto. **IT IS IMPORTANT THAT YOU BE REPRESENTED.** PLEASE SIGN, DATE AND RETURN THE PROXY TO THE ASSOCIATION IMMEDIATELY IF YOU DO NOT PLAN TO ATTEND THE SPECIAL MEETING IN PERSON.

---

Patrick Joyce, President
Stormy Point Village—Phase III Property Owners Association, Inc.

(Agenda on Reverse side)

# Stormy Point Village - Phase III Property Owners Association, Inc.

**Annual Meeting of the Members**
201 Old Harbor Lane
Branson, Missouri

Tuesday, March 3, 2015
8:30 a.m. (Central Time)
*(Registration begins at 8:00 a.m.)*

## AGENDA

I. **Call Meeting to Order**
   A. Welcoming Remarks
   B. Introductions
   C. Proof of Notice of Mailing
   D. Establish Quorum

II. **Introduction of Board Members**

III. **Overview of 2014**

IV. **Approval of the 2014 Annual Meeting Minutes**

V. **Discussion of Financial Status of Resort**

   A. Approval/acceptance 2013 Audit Report

VI. **Merger with Phase I & II**

VII. **Management Company Report**

VIII. **Voting (Merger)**

IX. **General Discussion / Open Forum**

X. **Adjournment**

- Special Note: A Vacation Ownership (101) question and answer session will be available to attending owners following the annual meeting. Topics: Exchange, Owner Services, Resort Operations and Customer Service/Contracts.

Please let us know if you will be attending.

*In order to expedite the conduct of business, we ask that you please hold any questions and/or comments until the General Discussion / Open Forum portion of the meeting. If you have special items of business you wish to have brought before the Association you may contact a Board member or management staff prior to the meeting. Thank you.*

Exhibit H (Page 3 of 15)

# PLAN OF MERGER
## OF
## STORMY POINT VILLAGE ASSOCIATION, INC.
## AND
## STORMY POINT VILLAGE-PHASE III PROPERTY OWNERS ASSOCIATION, INC.

**THESE ARTICLES OF MERGER AND PLAN OF MERGER** are entered into as of ___ day of _____, 2015, by and between Stormy Point Village Association, a Missouri nonprofit corporation ("Village Association"), and Stormy Point Village-Phase III Property Owners Association, Inc., a Missouri nonprofit corporation ("Phase III Association").

Whereas, the Village Association and the Phase III Association have contemporaneously been responsible for the maintenance, operation and administration of that timeshared resort community located in Stone County, Missouri and known as "Stormy Point Village"); and

Whereas, it is acknowledged that certain accounting, administration, general and other expenses could be saved should be Village Association and the Phase III Association be merged together; and

Whereas, the boards of directors of the Village Association and the Phase III Association have both voted to merge together upon the terms and subject to the conditions set forth herein (the "Merger"), it being agreed and understood that the Phase III Association shall be deemed to be the survivor of such merger and that all of the assets and liabilities of Village Association will be merged into an assumed by the Phase III Association;

Now, therefore, for value received and intending to be legally bound hereby, and pursuant to the affirmative vote by both the boards of directors and memberships of the Village Association and the Phase III Association, the parties hereto, intending to be legally bound hereby, covenant and agree as follows:

## ARTICLE I
## PARTIES TO THE MERGER/SURVIVING CORPORATION

1.1 **Names of Corporations.** The parties to this plan of merger are as follows:

Stormy Point Village Association,
a Missouri not-for-profit corporation
and
Stormy Point Village—Phase III Property Owners Association, Inc.,
a Missouri not-for-profit corporation.

1.2 **Surviving Corporation.** Upon the completion of the Merger and as of the

Effective Date (defined below), Stormy Point Village—Phase III Property Owners Association, Inc., a Missouri not-for-profit Corporation, shall be deemed and identified as the surviving corporation.

## ARTICLE II
## TERMS AND CONDITIONS OF THE MERGER

**2.1** **The Merger.** At the Effective Date and subject to the terms and conditions of this Plan of Merger, the Village Association shall be merged into the Phase III Association and the separate existence of the Village Association shall thereupon cease, in accordance with the applicable provisions of the Nonprofit Corporation Laws of the State of Missouri. All assets and liabilities of the Village Association shall be merged into, accrue to the benefit of and be assumed by the Phase III Association. The Merger will have the effects specified by the Nonprofit Corporation Laws of the State of Missouri.

## ARTICLE III
## MEMBERSHIP CONVERSION

**3.1** **Membership Conversion.** All parties holding membership interests in and to the Village Association shall, after the Effective Date, shall hold membership interests in and to the Phase III Association and shall possess in a nondiscriminatory manner all benefits and privileges otherwise afforded members of the Phase III Association, subject to any benefits that may require on a nondiscriminatory basis the payment of subsequent fees or expenses. Membership interests shall be transferred without the need for additional action by any Village Association member and shall occur without cost to said members. Membership any Phase III Association shall be governed in accordance of the provisions of the Phase III Association bylaws, a true and correct copy of which are attached hereto as **Exhibit A**.

## ARTICLE IV
## MISCELLANEOUS

**4.1** **Effective Date.** The Merger will become effective at the date and time the Articles of Merger is filed with the office of the Secretary of State of the States of Missouri (the "Effective Date").

**4.2** **Approval of Merger.** In accordance with Missouri law, prior to the filing of record of the Articles of Merger this merger shall be approved by the boards of directors of the respective associations in their minutes and resolutions, and then by the at special meetings of the associations membership by two-thirds of votes cast or a majority of the voting power of the members, whichever is less. The boards of directors of the associations shall give written notice consistent with their bylaws of the general membership meeting at which the Merger will be considered in a fair and reasonable manner and, within said notice, state that a purpose of the meetings are to consider the plan for merger. Such notice shall contain either a copy or summary of the plan. The copy or summary of the plan for the members of the disappearing corporation shall include a copy or summary of the articles and bylaws which will be in effect

immediately after the merger takes effect.

This Plan of Merger is executed by the undersigned as of the date first referenced above

**STORMY POINT VILLAGE ASSOCIATION, INC.**

By:_____

Title:_____

**STORMY POINT VILLAGE-PHASE III PROPERTY OWNERS ASSOCIATION, INC.**

By:_____

Title:_____

Exhibit H (Page 6 of 15)

Case 6:15-cv-03092-BP   Document 1-9   Filed 02/27/15   Page 6 of 15

**EXHIBIT A**
**BYLAWS**
**OF**
**STORMY POINT VILLAGE—PHASE III PROPERTY OWNERS ASSOCIATION, INC.**

# BYLAWS
# OF
# STORMY POINT VILLAGE—PHASE IIII
# PROPERTY OWNERS ASSOCIATION, INC.

## ARTICLE I
## APPLICATION AND DEFINITIONS

These Bylaws shall apply to all present and future owners, mortgagees, lessees, or other occupants, and all other persons who may use the facilities of Stormy Point Village—Phase IIII as presently platted or as may be platted in the future (hereinafter "Development"), with the mere act of occupancy of any of the units or property to signify that these Bylaws and all other of the Development documentation, rules, and regulations are accepted, ratified and complied with. All terms herein shall be considered to have the same definition as in the Declaration of Covenants and Restrictions for Stormy Point Village—Phase III as recorded in the public land records of Stone County, Missouri (the "Declaration").

## ARTICLE III
## STORMY POINT VILLAGE—PHASE III PROPERTY OWNERS ASSOCIATION, INC.

Section 1. Membership and Management.

a. Classes A Memberships. A Class A membership in the Stormy Point Village—Phase III Property Owners Association, Inc. (hereinafter referred to as "Association") is conferred by VPG Partners VI, LLC (the "Developer") to any and all purchasers of Unit Weeks, as such term is defined in the Declaration, who remain current in their financial obligations owed to the Developer and to the Association. A person is deemed a "purchaser" of a Unit Week by virtue of the person's execution of a Unit Week purchase contract or by virtue of the delivery by the Developer of a deed of a Unit Week to the person. A person shall lose their Class A Membership status upon the resale or reconveyance of their Unit Week. The Developer also holds all Class A memberships for unsold memberships. The rights and obligations of a Member and membership in the Association shall not be assigned, transferred, pledged, conveyed or alienated in any way except upon transfer of a Membership by conveyance, by intestate succession, testamentary disposition, foreclosure of a security interest in favor of the Association, or other legal process under the laws of Missouri. Transfer by conveyance may only be accomplished via a conveyance, through General Warranty Deed, of the full real property interest of the Member, with the appurtenant rights of occupancy and Association membership. Upon the execution of a Unit Week purchase contract or the delivery of a deed, the Association will recognize said purchaser as a Member. Any attempt to make a prohibited transfer shall be void. A reasonable charge may be assessed by the Association for each such transfer. No reservation for use of a Unit Week may be made by a transferee of a Deed until the Association has received a written notice of the transfer from the transferor and all fees and other charges due the Association have been paid been paid. The transfer fee is $25, subject to change by the Board. Upon receipt of the transfer fee, all accrued fees and other

charges due the Association, and a copy of the recorded deed conveying the Member's ownership interests from the transferor, and any amounts of money that are owed to the Association, the Association will promptly issue new membership documentation to the transferee.

b. **Class B. Memberships.** Class B membership is held by the Developer.

c. **Management of the Association.** The Association, through its Board of Directors, shall have the responsibility of managing the Association or arranging for its management pursuant to a Management Agreement which has been or will be entered into between the Association and Management Firm. All management duties may, unless prohibited by the Declarations, be assigned to the Management Firm or its successors under said Management Agreement. Except as otherwise specifically provided, decisions required to be made by the Class A Members of the Association shall require approval of a majority thereof.

**Section 2. Place of Meeting.** Meetings of the members of the Association shall be held at Branson, Missouri, or at such other suitable place convenient to the members as may be designated by the Board of Directors.

**Section 3. Annual Meeting.** The annual meetings of the members of the Association shall be held on the first Tuesday in March of each year, commencing in March 2007. At such meeting the Class B members shall by ballot elect a Board of Directors of the Association and all of the Members may elect an Advisory Board, if applicable, for the ensuing year, and transact such other business of the Association as may properly come before the meeting.

**Section 4. Special Meetings.** It shall be the duty of the President of the Association to call a special meeting of the members if directed to do so by resolution of the Board of Directors, or by a petition signed by a seventy-five percent (75%) of the members. Notice thereof shall state the time, place and purpose of said meeting, and no business shall be transacted at any special meeting other than that stated in said notice, except by consent of no less than seventy-five percent (75%) of the members present, either in person or by proxy.

**Section 5. Notice of Meeting.** It shall be the duty of the Secretary to mail a notice of the annual meeting and each special meeting (stating the purpose of said special meeting) to each Unit Owner or Unit Week Purchaser on record with the Association at least fifteen (15) days but not more than thirty (30) days in advance of each annual meeting, and at least five (5) days but not more than ten (10) days in advance of any such special meeting, such notice to be considered complete upon mailing.

**Section 6. Voting and Majority.** All Class A Members (including the Developer) shall be entitled to one vote for each Unit Week owned. All actions not delegated to the Advisory Board in Article III, Section 8 hereof, shall be within the control of the Class B Members, which now consists of the Developer. The Class B Members may, but are not required, to allow Class A Members to vote on various matters.

Section 7. Quorum. Except as otherwise specifically provided herein, the presence in person or by proxy of members holding 10% of the total vote of Class A Members with respect to meetings of the Class A Members and 100% of the Class B Members with respect to meetings of the Class B Members shall constitute a quorum of such classes. In the event a quorum is not present, the members who are present, either in person or by proxy, may adjourn the meeting to a time not less than twenty-four (24) hours from the beginning day and time of the then meeting.

Section 8. Proxies. Votes may be cast either in person or by proxy. Proxies shall be in the form determined from time to time by the Board of Directors, and must be filed with the Secretary at least two (2) days before the scheduled date and time of a regular meeting, or at least twenty-four (24) hours before the scheduled time of a special meeting.

## ARTICLE IIII
## BOARD OF DIRECTORS

Section 1. Number and Qualifications. The Board of Directors of the Association shall consist of at least three (3) persons.

Section 2. Powers and Duties. The Board shall manage and control the affairs of the Association, select the officers thereof, establish committees thereof and appoint the members of said committees, adopt reasonable rules of order for the conduct of the meetings of the Association and have sole determination of procedural questions upon which no rules have been adopted, assign such duties and responsibility to the committees as it considers desirable which are not inconsistent with these Bylaws or any other of the Declaration documentation, adopt reasonable rules and regulations for the use of the units and limited common properties, see to the maintenance of the Units and Common Properties and the operation of the Units and Common Properties and the collection of assessments for that purpose, except to the degree that said duties and responsibilities have been delegated to the Management Firm under the Management Agreement.

Section 3. Election and Term of Office. At the first annual meeting of the Association, the term of office of the candidate for the Board receiving the greatest number of Class B votes shall be three (3) years, the term of office of the candidate receiving the next highest number of Class B votes shall be two (2) years, and the term of office of the candidate receiving the third highest number of Class B votes shall be one (1) year. At the expiration of the initial term of each Director, his successor shall be elected to serve a term of three (3) years. Each Director shall hold office until his successor has been duly elected and qualified. Pending the first election pursuant hereto, those persons named in the Articles of Incorporation of the Association shall serve as the initial Board of Directors. Cumulative voting will not be permitted in the election of the Board of Directors. Only Class B Members will be allowed to vote in an election for the Board of Directors.

Section 4. Meetings. The first meeting of the Board of Directors shall be held within ten (10) days following their election, at such place and time as they may determine by resolution at the meeting in which they were elected, of which no notice shall be required. Regular meetings of the Board may be held at such time and place as shall be determined by a majority resolution, at least two of which meetings shall be held during each fiscal year. Notices thereof shall be given to each

member personally or by mail, telephone or telegraph at least ten (10) days prior thereto. Special meetings may be called by any two (2) Directors, notice of which shall be given to each member of the Board, in the manner above described, at least three (3) days prior thereto. Notice of any meeting may be waived prior to or at any meeting of the Board. Attendance at a meeting by a member of the Board shall constitute a waiver of notice by him, unless he announces that his only purpose in attending said meeting is to object to its being held without proper notice. Any action which may be taken at a meeting may be taken without a meeting, in writing signed by all members of the Board and filed with the Secretary of the Association.

Section 5. Quorum. Two (2) members of the Board of Directors shall constitute a quorum to transact its business, and the act of a majority of the Directors present shall be deemed to be the act of the Board.

Section 6. Vacancies and Removal. Any vacancy on the Board shall be filled by the remaining Directors, even though they might constitute less than a quorum. Any person so elected shall serve out the expired term of the vacant office. Any member of the Board of Directors may be removed with or without cause at any time by a vote of the members of the Association holding a majority of the votes cast at any regular meeting or any special meeting called for that purpose.

Section 7. Fidelity Bond. The Board of Directors may require that any or all officers of the Association handling funds of the Association furnish a fidelity bond in an amount determined by the Board, the premium for which shall be paid by the Association.

Section 8. Advisory Board. The Developer may choose to allow the Class A Members to elect advisory directors to serve on an Advisory Board, in which case the following provisions apply:

    a. Nomination. Nominations for election to the Advisory Board may be made by a Nominating Committee. Nominations may also be made by Class A or Class B Members from the floor at the annual meeting. The Nominating Committee shall consist of a Chairman, who shall be a Class A Member of the Association. The Nominating Committee shall be appointed by the Board of Directors prior to each annual meeting of the Members, to serve form the close of such annual meeting until the close of the next annual meeting and such appointment shall be announced at each annual meeting. The Nominating Committee shall make as many nominations for election to the Advisory Board as it shall in its discretion determine, but not less than the number of vacancies that are to be filled. Such nominations must be made from among Members. The Board may serve as the nomination committee, at is option.

    b. Election. Each Member entitled to vote shall have the right to vote, in person or by proxy, one vote for each Unit owned by him/her for as many persons as there are to be elected and give one candidate as many votes as the number of directors to be elected multiplied by the number of his units shall equal, or to distribute the votes on the same principle among as many candidates as he may see fit. The persons receiving the largest number of votes shall be elected.

4

c. <u>Powers of Advisory Board</u>. The Advisory Board's powers are limited to providing recommendations to the Board of Directors and Association management on such issues as Member satisfaction, complain resolution, enforcement of rules and evaluations of changes in Development management and facilities.

d. <u>Definitional Clarification</u>. Any reference to the Board shall mean the board of directors and not the advisory board.

## ARTICLE IV
## OFFICERS

Section 1. <u>Designation, Election and Removal</u>. The officers of the Association shall be a President, a Vice-President, a Secretary and a Treasurer, and such additional Vice-Presidents and Assistant Secretaries and Assistant Treasurers as may be determined from time to time by the Board, all of whom shall be elected by the Board. Any two offices may be held by the same person, except the offices of President and Secretary. The officers shall be elected annually by the Board and shall hold office at the pleasure of the Board. Any officer may be removed, with or without cause, and his successor elected by majority vote of the Board.

Section 2. <u>President</u>. The President shall be the chief executive officer of the Association, and shall be a member of the Board of Directors. He shall preside at all meetings of the Board and the members of the Association, shall have all of the general powers and duties usually vested in the office of President, including but not limited to the power to appoint committees from among the Association's members from time to time as he may consider appropriate.

Section 3. <u>Vice President</u>. The Vice President shall perform the duties of the President in the absence of the President, and perform such other duties as may from time to time be assigned to him by the Board of Directors.

Section 4. <u>Secretary</u>. The Secretary shall keep minutes of all meetings of the Board and the members of the Association, have custody of the records of the Board and the Association, and perform all duties incident to the office of Secretary and such other duties as may be assigned to him from time to time by the Board.

Section 5. <u>Treasurer</u>. The Treasurer shall be responsible for the funds of the Association and for keeping full and accurate accounts of all receipts and disbursements and all other financial records of the Association. He shall be responsible for the deposit of all monies and other valuable effects in the name and to the credit of the Association in such depositories as may from time to time be designated by the Board, and for delivering to the Management Firm any and all funds owed by the Association to the Management Firm.

## ARTICLE V
## MORTGAGEES

**Section 1. Notification.** Any Unit Owner or Unit Week Purchaser who mortgages his Unit or Unit Week or his interest therein shall notify the Association, through the Management Firm, or the President of the Board of Directors, in the event there is no Management Agreement then in effect, of the name and address of his mortgagee, and the Association or Management Firm shall maintain a record of said mortgagees.

**Section 2. Notice of Unpaid Assessments.** The Association or the Management Firm shall, at the request of any mortgagee of a Unit or Unit Week, report any unpaid assessments due from its mortgagor.

**Section 3. Rights of Mortgagees.** All mortgagees shall have the rights granted to them by the Declaration, and nothing contained herein shall contravene said rights.

## ARTICLE VI
## AMENDMENT

These Bylaws may only be amended by the affirmative vote of at least two-thirds of the Class B Members of the Association. These Bylaws may also be amended by a two-thirds (2/3) vote of the Board of Directors of the Association. No such amendment shall become effective until an appropriate written indication thereof is recorded in the public land records of Stone County, Missouri.

## ARTICLE VIII
## MISCELLANEOUS

Upon ten (10) days' notice to the Association's Board of Directors and the payment of a reasonable fee, any Unit Owner or Unit Week Purchaser shall be furnished a statement of his account setting forth the amount of any unpaid assessments or other charges due and owing from such Unit Owner or Unit Week Purchaser. The Association's Board of Directors and/or officers may delegate any or all of its powers to a third party management firm. Any officer or director may prepare, execute, certify, and record amendments to the Development's Declaration on behalf of the Association. The Association through its Board of Directors may modify and amend the Development's Initial Rules and Regulations as appended to the Declaration at any time.

These Bylaws are hereby adopted, accepted and fully ratified as the Bylaws of the Association on this _15th_ day of _September_ 2007

_____
Director

_____
Director

_____
Director

## PROXY

The undersigned, a member of The **Stormy Point Village—Phase III Owners Association, Inc.**, does hereby nominate and appoint Tom Newman and Christy Curtis, or either of them, to serve as the undersigned's agent-in-fact and proxy, and hereby authorizes said agent to cast the undersigned's vote on the following matters that shall be addressed at that annual meeting of the Association that is scheduled to occur at 8:30 am (Central Time) on March 3, 2015 along with all adjournments, postponements and continuations of such meeting:

| **Issue No. 1** | **For** _____ | **Against** _____ |
|---|---|---|
| To consider the merger of the Association and the Stormy Point Village Association, a Missouri not-for-profit corporation, pursuant to that Plan of Merger that is attached hereto, it being agreed and understood that **Stormy Point Village—Phase III Property Owners Association, Inc.** shall be the survivor corporation as a result of such merger. | | |

| **Issue No. 2** | **For** _____ | **Against** _____ |
|---|---|---|
| To consider all other items and issues that might properly, be brought before the Association membership for vote and consideration.. | | |

This proxy may be rescinded by the undersigned at any time by submission of a later-dated proxy and shall not be deemed automatically rescinded by the personal appearance of the undersigned at any of the aforementioned meetings. **If the proxy is received without indication as to how the undersigned wishes to vote on the issues identified herein, the proxy will be voted FOR any Issue that is unmarked.**

_____
[Signature of Member]

Dated:_____