IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| TRADING PLACES INTERNATIONAL, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 6:15-cv-03092-BP |
| | ) |
| SUMMERWINDS RESORT SERVICES, LLC, ET AL., | ) |
| | ) |
| | ) |
| Defendants. | ) |

**COUNTERCLAIMS OF DEFENDANT STORMY POINT VILLAGE – PHASE III PROPERTY OWNERS ASSOCIATION, INC.**

For its Counterclaims Against Plaintiff/Counterclaim Defendant Trading Places International, LLC (hereinafter "TPI"), Defendant/Counterclaimant Stormy Point Village – Phase III Property Owners Association, Inc., (hereinafter the "Association") states as follows:

1. The Association is a nonprofit corporation duly organized and existing under the laws of Missouri, with its principal place of business located in Branson, Missouri.

2. For purposes of diversity jurisdiction, the Association is a resident of Missouri.

3. TPI is, upon information and belief as alleged in TPI's Amended Complaint, a California limited liability company with its principal place of business located in the State of California; and, upon information and belief, the sole member of TPI is a Florida entity and citizen of Florida.

4. TPI's residence for purposes of diversity jurisdiction is Florida and/or California.

5. Upon information and belief as alleged in TPI's Amended Counterclaim, TPI is the successor in interest to Trading Places International, Inc. (a California corporation) by way of

corporate conversion under California law, such that TPI is, upon information and belief, the proper party in interest to the various management agreements at issue in this lawsuit.

6. The amounts in controversy exceed $75,000, and upon information and belief, exceed $500,000, and Jurisdiction is proper pursuant to 28 U.S.C. §1332(a),

7. Venue is proper in this judicial district under 28 U.S.C. §1391(b)(2) in that a substantial part of the events and omissions giving rise to the claims herein occurred in this judicial district.

8. Venue is further proper in this judicial district because the counterclaims asserted herein arise from and relate to the same agreements, and rights and obligations of the parties' under those agreements, that form the basis for Plaintiffs' claims set forth in TPI's First Amended Complaint, and since TPI has already filed suit against the Association in this case in this judicial district, TPI has consented to venue in this district.

9. On or about January 1, 2008, TPI's predecessor, Trading Places International, Inc. was engaged to serve as manager for the Association.

10. From 2008 to 2010, Trading Places International, Inc. performed its management duties for the Association pursuant to the terms of a Management Agreement dated January 1, 2008, which was prepared by Trading Places International, Inc. (the "Original Management Agreement").

11. From the beginning of the relationship, it was understood and intended by the parties that on-site management of the Association would not be the responsibility of Trading Places International, Inc. In fact, TPI has never performed on-site management for the Association.

12. On or about July 20, 2010, Trading Places International, Inc. entered into an Amended and Restated Sub-Management Agreement with the Association and the Association's Manager Summerwinds Resort Management Company, LLC (misidentified as Summerwinds Resort Services, LLC). A true and accurate copy of the Amended and Restated Sub-Management Agreement is attached hereto as **Exhibit A**.

13. By its express terms, the Amended and Restated Sub-Management Agreement amended and restated the Original Agreement from 2008, such that the Amended and Restated Sub-Management Agreement superseded the Original Agreement.

14. Pursuant to the terms of the Amended and Restated Sub-Management Agreement, Trading Places International, Inc. was engaged as the Sub-Manager for the Association and it agreed to accept said appointment and to undertake to perform all of the services and responsibilities set forth in the Amended and Restated Sub-Management Agreement and to comply with all provisions of the agreement.

15. Upon information and belief, on or about November 30, 2010, Interval International Leisure Group acquired all of the equity in Trading Places International, Inc. and the corporation was converted to a limited liability company, now known as TPI.

16. As Sub-Manager for the Association, TPI was responsible for management of the finances of the Association, including budgeting, reserve studies, paying of certain bills, audits, and financial reporting.

17. Due to the nature of its relationship with the Association, and the trust that was placed in TPI to manage the financial affairs and other affairs of the Association, TPI owed fiduciary duties to the Association.

18. Pursuant to Section 3.2 of the Amended and Restated Sub-Management Agreement, the agreement may be terminated prior to the natural expiration of any term, by either party, at any time for cause, provided that, if the cause constitutes a breach or default of the agreement which is capable of being cured, such breach or default shall not have been cured within thirty (30) days following written notice of such breach or default.

19. Pursuant to the terms of Section 6.2 of the Amended and Restated Sub-Management Agreement, TPI was to be compensated as follows:

(a) Sub-Manager's management fee shall be $1.50 per owner per month, or three thousand, three hundred ninety-two dollars ($3,392.00), whichever is greater.

(b) Financial and accounting services fees shall by $1.10 per owner per month, or two thousand, four hundred sixty-five dollars ($2,465.00), whichever is greater.

(c) Reservations services fees shall be $2.00 per owner per month, or four thousand, one-hundred forty-three dollars ($4,143.00), whichever is greater.

20. In a purported effort to simplify the fee calculation process, Section 6.3 of the Amended and Restated Sub-Management Agreement further provided that "Sub-Manager will combine the fees in sections 6.[2](a)-(c), into one fee.[1] Summerwinds agrees to pay Sub-Manager Ten thousand dollars ($10,000.00) per month or $5.50 per owner per month whichever is greater."

21. However, Section 6.3 erroneously calculated the total per owner fee, in that the calculation for the monthly management fees is $10,000.00 per month or $4.60 per owner per month, whichever is greater, as intended by the parties and as consistent with the fee structure set forth in Section 6.2 of the agreement.

---

[1] The first sentence of Section 6.3 of the Amended and Restated Sub-Management Agreement erroneously refers to "sections 6.4(a)-(c)" as opposed to sections 6.2(a)-(c).

22. Upon information and belief, TPI has overcharged the Association for its management fees since 2008 when it was engaged to manage the Association.

23. TPI never disclosed or reported to the Association or its board of directors how TPI calculate the monthly management fees it charged to and collected from the Association, such that the Association has not had the ability to verify the fees charged by TPI and has not, until recently, had reason to know that TPI was, in fact, overcharging the Association.

24. TPI's financial reports and audits for the Association were done improperly in that they did not report any information showing how TPI charged its management fees, did not verify TPI's management fee charges and reported that the developer owed the Association approximately $1,000,000, when, in fact that was not the case. TPI's improper audit caused the developer to engage its own independent audit, which revealed TPI's accounting and audit was incorrect, and led to additional investigation that caused the Association's board of directors to believe that TPI has been overcharging the Association since 2008.

25. For example, TPI's maximum fee for 2009 was capped at $120,000.00 based on the number of owners with use time that the Association had at the time. However, the financial reports TPI prepared for the Association show that TPI charged the Association $181,959.00 in management fees, revealing that TPI over charged the Association for 2009.

26. Based on the limited financial information available to the Association, it is also believed that TPI over charged for 2008 and 2010 in the same way it overcharged for 2009.

27. In addition to the over charges that TPI made in the first few years of its management, upon information and belief, TPI has also improperly charged the Association for services it failed to provide and/or charged the Association at a higher rate than was intended by the parties under the terms of the management agreement.

28. In response to the Association's notice of default sent to TPI on August 25, 2015, TPI's President and CEO, Loren Gallagher, confirmed that TPI has used $5.50 per owner per month as the basic "annual" billing rate. However, as mentioned above, the total fee should have been capped at no more than $4.60 per owner per month as set forth in the fee schedule and as intended by the parties.

29. In addition, through its recent investigations into the management fees charged by TPI, the Association has been unable to tie any of the fees reported in the financial statements prepared by TPI for the Association to any calculation of fees that would be permitted under the terms of the management agreement.

30. Rather, based on the Association's analysis of the roster reconciliations provided by TPI and the financial reports submitted by TPI, it appears that TPI has charged the Association not only for reservations and financial services, but also for management services, even though TPI has never provided on-site management.

31. Thus, upon information and belief, TPI has over charged the Association for management services it has never provided.

32. Several years ago, TPI's Controller discovered that the fee provision contained in Section 6.3 of the Amended and Restated Sub-Management Agreement contradicted the controlling fee schedule set forth in Section 6.2 of the agreement.

33. Upon information and belief, TPI's Controller advised TPI management of the contradiction and asked management what dollar amount to bill the Association.

34. Upon information and belief, TPI's ownership directed the Controller to continue to bill the Association using the $5.50 per owner fee, rather than the $4.60 maximum fee provided by the contract and intended by the parties.

35. As the Sub-Manager and fiduciary for the Association, TPI had a contractual and fiduciary obligation to inform the Association and its board of directors of the overcharges and contradiction in the contract and to account to the Association for its overcharges.

36. However, TPI deliberately chose for its own benefit and profit to conceal the information from the Association and continued to overcharge its management fees to the Association in breach of its obligations and to the detriment and damage of the Association.

37. TPI continued to conceal its overcharging in its financial reporting to the Association so that TPI could continue to collect management fees it was not owed.

38. TPI's conduct is breach of contract and breach of its fiduciary duties and constitutes a fraud upon the Association.

39. The Association has never been given information showing how TPI charged its management fees on a monthly basis and never received any documentation or accounting to allow the Association to verify the management fees that TPI has charged.

40. The Association has made multiple demands in recent months for TPI to provide a full accounting to the Association of the management fees it charged and collected from the Association, but TPI has failed to provide the requested information and accounting, thereby breaching its contractual and fiduciary duties to the Association.

41. On August 25, 2015, the Association sent TPI a Notice of Default, advising TPI that it was in breach and default of the Amended and Restated Sub-Management Agreement, for among other things, its apparent overcharging of its management fees. The notice requested TPI to explain how it calculated its management fees, demanded a full accounting from TPI for monies it has charged to and collected from the Association, and demanded that TPI reimburse the Association for any amounts it wrongfully collected. Pursuant to the terms of the Amended

and Restated Sub-Management Agreement, TPI was given 30 days to meet the Association's demands and to cure its defaults. A true and accurate copy of the Notice of Default is attached as **Exhibit B**.

42. Despite the notice and demand, and the Association's subsequent demands, TPI has failed and/or refused to provide a full accounting of its management fees to the Association, failed to provide the Association with the documentation and information it requested to audit TPI's management fees, and failed to repay the Association for amounts TPI overcharged.

43. Because TPI failed to respond to the Association's requests for an accounting and information and because TPI failed to repay the Association amounts it overcharged within 30 days of receiving the Notice of Default, on September 28, 2015, the Association sent TPI a Notice of Termination and Change of Service, terminating TPI's services and management agreement for cause. A true and accurate copy of the Notice of Termination is attached as **Exhibit C**.

44. Pursuant to the terms of the Amended and Restated Sub-Management Agreement, as a result of its termination, TPI has an obligation to preserve and turn-over to the Association all of the Association's funds, documents and data in TPI's possession.

45. The Association has requested that TPI cease withdrawing any further management fees and turn over all of the Association's funds, documents and data to the Association, but TPI has failed and refused to do so.

46. In fact, in a brazen disregard for its fiduciary duties and the rights of the Association, TPI has continued to charge its monthly management fees after it was terminated and told to take no further money from the Association's funds.

47. What's worse is that TPI has continued to charge the Association an inflated and improper fee even though no fee is owed.

48. In addition, TPI has failed and refused to provide the Association with the funds it needs to pay its operating expenses, which further damaged the Association. Throughout its management of the Association, TPI routinely delayed payments to the developer for reimbursement of Association operating expenses.

49. Since its termination, and despite the Association's continued requests, TPI has still failed and refused to provide the Association with an accounting of TPI's management fees.

50. TPI has breached its contractual obligation and its fiduciary duties to the Association by:

    a. failing to properly calculate and charge its management fees;

    b. overcharging the Association for management fees it did not provide and/or charging fees at a rate higher than that intended by the parties and the management contract;

    c. failing to inform the Association of the error in the rate of the monthly management fee when TPI discovered it, and, thereafter, deliberately concealing the information from the Association and its board of directors, failing to disclose the information in the Association's financial reports or audits, and intentionally continuing to overcharge the Association management fees TPI knew or should have known were improper and not owed;

    d. failing to full account to the Association when the Association demanded an accounting of TPI's management fees;

    e. failing to provide the Association with all the documentation and information it needs to audit TPI's management fees;

f. failing to reimburse the Association for amounts TPI wrongfully charged to the Association; and

g. continuing to mismanage and misappropriate the Association's funds, documents and data after TPI was terminated as the Sub-Manager for the Association.

51. Without an accounting, it is difficult to calculate with certainty the damages that TPI has caused to the Association by its overcharging and mismanagement of the Association's finances. However, based upon the annual financial reports and roster reconciliations provided to the Association, the Association believes the Association has been overcharged in excess of $500,000 by TPI.

52. TPI's above-mentioned conduct was done willfully, deliberately, knowingly and in complete disregard to the rights of the Association and its members, such that an award of punitive damages is proper.

## COUNT I
## BREACH OF CONTRACT

53. The Association restates each of the allegations in the preceding paragraphs as if fully set forth herein.

54. Pursuant to the terms of the management agreement between the parties, TPI was only entitled to charge fees attributable to the services it provided in accordance with the fee structure set forth in the agreement.

55. In addition, pursuant to the terms of the management agreement, TPI was to properly and faithfully provide financial management services for the Association, which included providing accurate and timely financial reports, audits and reserve studies, and paying operating expenses for the Association.

56. Pursuant to the terms of the management agreement, TPI was also obligated to perform reservation management services for the Association.

57. TPI also had an obligation under the management agreement and because of the fiduciary nature of its relationship with the Association to provide prompt and accurate reporting of information that the Association and its board of directors needed or requested.

58. As the Sub-Manager for the Association, TPI had a duty of loyalty to the Association and the duty to act in the best interests of the Association when conducting the Association's business and affairs and when handling the Association's finances.

59. TPI also had an obligation under the management agreement to turn-over to the Association all money, documents and data in the Association's possession after TPI's management services were terminated.

60. TPI has breached is contractual obligations to the Association by overcharging the Association management fees it did not earn and/or was not entitled to charge.

61. TPI has breached its contractual obligations by failing to timely and accurately report to the Association information that TPI was charged with preparing and reporting, including accurate financial statements and audits.

62. TPI has breached its contractual obligations by failing to disclose to the Association its overcharging, and by deliberately concealing the overcharging from the Association.

63. TPI has breached is contractual obligations by failing to keep the Association apprised of accurate owner information.

64. TPI has breached its contractual obligations by failing to account to the Association for its management fees, failing to provide documentation and information so that he

Association can audit TPI's management fees, and failing to reimburse the Association for monies wrongfully charged to the Association.

65. TPI has breached its contractual obligations by deliberately continuing to charge the Association an improper management fee after TPI was terminated and by failing to turn over to the Association the Association's funds, documents and data.

66. TPI has failed to perform its contractual obligations in good faith and with that degree of skill and loyalty that a prudent manager/fiduciary would be expected to perform.

67. As a direct and proximate result of TPI's breach of its contractual obligations, the Association has been damaged in that it has incurred and paid management fees that were not earned and/or owed, it has incurred the costs associated with obtaining independent audits and accounting services to correct the deficient prepared by TPI, and the Association has incurred legal fees and expenses associated with TPI's breach of contract and the defense and prosecution of this litigation.

68. The Association is entitled to recover its reasonable expenses, attorneys' fees and costs associated with this litigation pursuant to the terms of the Amended and Restated Sub-Management Agreement.

69. Upon information and belief, the Association's damages exceed $500,000 and will be proven at trial after an audit of amounts TPI has collected from the Association.

WHEREFORE, the Association prays that the Court enter judgment in its favor against Trading Places International, LLC on the Association's claim for breach of contract, and award the Association actual damages in an amount to be proven at trial, but which is believed to be in excess of $500,000, together with prejudgment and post-judgment interests, costs, expenses and attorneys' fees, and for such other and further relief as the Court deems just and proper.

## COUNT II
## BREACH OF FIDUCIARY DUTY

70. The Association restates each of the allegations in the preceding paragraphs as if fully set forth herein.

71. As Sub-Manager and due to the nature of its relationship and responsibilities to the Association, TPI owed, and continues to owe, the Association a fiduciary duty of trust, loyalty, fidelity, and a duty to act in good faith and in the bests interests of the Association when managing the Association's finances and affairs and when reporting to and communicating with the Association and its board of directors. TPI also is obligated to be forthcoming and honest with the Association when dealing and reporting to the Association and its board of directors.

72. TPI has breached its fiduciary duties to the Association as described here.

73. As a direct and proximate result of TPI's breach of its fiduciary obligations, the Association has been damaged.

74. TPI's violation of its fiduciary duties and wrongful conduct was done knowingly, intentionally, with malice and/or with reckless disregard to the rights of the Association and its members to whom TPI owed its fiduciary duties, such that TPI's conduct justifies an award of punitive damages.

WHEREFORE, the Association prays that the Court enter judgment in its favor against Trading Places International, LLC on the Association's claim for breach of fiduciary duty, and award the Association actual damages in an amount to be proven at trial, but which is believed to be in excess of $500,000, punitive damages in an amount that is fair and reasonable, together with prejudgment and post-judgment interests, costs, expenses and attorneys' fees, and for such other and further relief as the Court deems just and proper.

## COUNT III
## FRAUD

75. The Association restates each of the allegations in the preceding paragraphs as if fully set forth herein.

76. As Sub-Manager, TPI has prepared financial reports, audits and budgets for the Association and presented them to the Association's board of directors.

77. TPI's financial reports and audits reported the amount of management fees that TPI charged to the Association but provided no detail as to how the management fees were calculated on a monthly basis.

78. TPI intended that the Association and its board of directors rely on the financial reporting that TPI provided when the board of directors was approving budgets for the Association, and making other management decisions for the Association.

79. The financial reporting regarding the management fees charged to the Association was not correct and contained false and misleading information.

80. Several years ago, TPI discovered that it was charging $5.50 per owner per month when it should have been charging no more than $4.60 per owner per month, and probably less because TPI was charging for management services it did not provide.

81. However, TPI deliberately and intentionally concealed the information from the Association and its board of directors and continued to wrongfully overcharge and collect its management fees for its own profit to the detriment and expense of the Association.

82. TPI had a duty to disclose and not conceal the information regarding its overcharging to the Association and its board of directors, but it deliberately failed to do so.

83. TPI continued to overcharge its management fees and to conceal its overcharging in its financial reporting to the Association and failure to account to the Association.

84. TPI knew that the financial information it reported to the Association with respect to TPI's management fees was false and misleading and intended that the Association rely upon the information when approving budgets, audits, and tax returns, and when making other financial decisions for the Association.

85. Because TPI was engaged as the Sub-Manager and was responsible for management of the Association's financial affairs, TPI was in a position of trust and the Association had a right to rely on the information and TPI provided and expected that TPI would faithfully and honestly perform its management services.

86. The Association and its board of directors relied on the information provided by TPI, as well as TPI's management of the Association's financial affairs, in approving budgets and making other financial and management decisions concerning the Association.

87. TPI's conduct is fraudulent as to the Association, and, as a direct result of its conduct, the Association has been damaged.

88. TPI's fraudulent conduct was done knowingly, intentionally, with malice and/or with reckless disregard to the rights of the Association and its members to whom TPI owed its fiduciary duties, such that TPI's conduct justifies an award of punitive damages.

WHEREFORE, the Association prays that the Court enter judgment in its favor against Trading Places International, LLC on the Association's claim for fraud, and award the Association actual damages in an amount to be proven at trial, but which is believed to be in excess of $500,000, punitive damages in an amount that is fair and reasonable, together with prejudgment and post-judgment interests, costs, expenses and attorneys' fees, and for such other and further relief as the Court deems just and proper.

## COUNT IV
## ACCOUNTING

89. The Association restates each of the allegations in the preceding paragraphs as if fully set forth herein.

90. Because TPI was the Sub-Manager for the Association and responsible for management of the Association's finances and financial reporting, TPI owed a fiduciary duty to the Association and TPI has duty to fully and faithfully account to the Association for its management of the Association's funds and accounts.

91. The Association has good cause to request that TPI provide a full accounting as to any management fees and other charges that TPI paid itself from the Association's funds.

92. The Association has made multiple demands for an accounting from TPI, but TPI has failed to provide the Association with any meaningful information.

93. In order to protect and preserve the funds of the Association, which is a nonprofit corporation, funded in large part through the maintenance fees of the Association's members, the Association is entitled to an accounting, so that the Association can audit TPI's management fees and determine the nature and extent of its damages.

94. The information needed to properly audit TPI's management fees is complex and likely contained in a number of different formats and reports. Because the Association lacks the information and documentation necessary to calculate the management fees that TPI should have charged, and because such information is in the possession of TPI but TPI refuses to provide the information to the Association, there is a need for discovery to conduct a proper accounting.

95. Without an accounting of the information and documentation in TPI's possession, the Association cannot verify or account for the management fees and monies that TPI paid itself

from the Association's funds, such that the Association has no adequate legal remedies and an accounting is necessary.

WHEREFORE, the Association requests that the Court enter its order and judgment in favor of the Association, granting the Association a full and equitable accounting of all amounts that TPI has charged to and collected from the Association, and compelling TPI to fully account to the Association for all amounts charged to and collected from the Association since TPI was first engaged to manage the Association, and awarding the Association damages in an amount to be proven by the accounting, for prejudgment and post-judgment interest, reasonable attorneys' fees, costs and expenses, and for such other relief as the Court deems just and equitable.

HUSCH BLACKWELL LLP

By: /s/ *Christopher F. Weiss*
    Bryan O. Wade, #41939
    Christopher F. Weiss, # 49314
    901 St. Louis St., Suite 1800
    Springfield, MO 65806
    Office: (417) 268-4000
    Fax No: (417) 268-4040
    bryan.wade@huschblackwell.com
    chris.weiss@huschblackwell.com

Attorneys for Defendants.

## **CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that a true and accurate copy of the foregoing counterclaim was forwarded this 13th day of October 2015 by notification through the court's efiling system to:

| | |
|---|---|
| James Meadows | Joshua D. Neally |
| Joshua B. Christensen | 205 Park Central East, Suite 501 |
| Lathrop & Gage, LLP | Springfield, MO 65806 |
| 910 East St. Louis Street, Suite 100 | Joshua@neallylaw.com |
| Springfield, MO 65806 | |
| jmeadows@lathropgage.com | |
| jchristensen@lathropgage.com | |

                                          /s/ *Christopher F. Weiss*
                                          Attorney