IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| TRADING PLACES INTERNATIONAL, LLC, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) ) |
| SUMMERWINDS RESORT SERVICES, LLC, et al., | ) ) ) ) |
| Defendants. | ) |

Case No. 15-03092-CV-S-BP

**ORDER**

This matter comes before the Court on Defendants Summerwinds Resort Services, LLC's ("Summerwinds") and Stormy Point Village – Phase III Property Owners Association, Inc.'s ("Stormy Point") Motion to Dismiss For Lack of Subject-Matter Jurisdiction and/or Failure to State a Claim, (Doc. 21), and Motion to Dismiss Count III for Failure to State a Claim, (Doc. 23). For the following reasons, Defendants' Motions are denied.

**I.     BACKGROUND**

Plaintiff Trading Places International, LLC's ("TPI") is a property management organization. Defendant Stormy Point is a timeshare resort in Branson, Missouri, and Defendant Summerwinds is an entity that was delegated management duties of Stormy Point by a non-party. The dispute in this case centers on a series of agreements related to the management of Stormy Point. On January 1, 2008, TPI and Summerwinds, on behalf of Stormy Point, entered into a Management Agreement which provided that TPI would be the "exclusive managing agent" of Stormy Point. TPI was required to "provide or cause to be provided all services and personnel required to administer the affairs of [Stormy Point] and to manage and operate the

[resort.]" (Doc. 19-2, p. 4.) The Management Agreement provided for a five year term which would expire on January 1, 2013.[1] Next, on July 20, 2010, TPI and Summerwinds entered into the Amended and Restated Sub-Management Agreement ("Sub-Management Agreement"), which had Stormy Point's signature of acknowledgement and consent. The Sub-Management Agreement named Summerwinds as the manager then delegated the manager's duties to TPI as the sub-manager and "exclusive managing agent" of Stormy Point for five years from the date of the contract. Finally, on November 25, 2012, TPI and Stormy Point executed an Amendment to the Management Agreement ("Amendment") which extended TPI's management term until December 31, 2017.

The First Amended Complaint centers on the duration of TPI's right to be the exclusive managing agent of Stormy Point. TPI alleges that Summerwinds notified TPI that Defendants would terminate the Sub-Management Agreement, and TPI's management of Stormy Point, upon its expiration on July 19, 2015. (Doc. 19-6.) However, TPI alleges that the Amendment is the operative agreement regarding the management term; therefore, TPI has the right to be the exclusive managing agent for Stormy Point through December 31, 2017. (Doc. 19-4.) TPI's First Amended Complaint seeks: (1) Declaratory Judgment against Summerwinds and Stormy Point finding that the contractual rights and obligations of the parties are controlled by the Amendment; or alternatively, (2) Anticipatory Breach of Contract against Stormy Point; and (3) Tortious Interference against Summerwinds.

Defendants now move for dismissal of the First Amended Complaint because Trading Places International, Inc., not Trading Places International, LLC, is the party named in the Management Agreement and Sub-Management Agreement. Defendants further argue that Count

---

[1] TPI alleges the term was five years, (Doc. 19, ¶ 19), however, the Management Agreement contains a handwritten amendment which states a term of two years (Doc. 19-2, p. 2). This discrepancy is not relevant as the dispute is over which subsequent agreement governs the term of TPI's management of Stormy Point.

III should be dismissed because Summerwinds is a party to the contract and cannot tortiuously interfere with its own contract. The Court takes up the parties' arguments below.

## II. DISCUSSION

### A. Standing

To properly plead a claim a plaintiff must allege facts that establish standing under Article III: (1) that the plaintiff suffered an injury-in-fact which is actual, not hypothetical; (2) there is a causal connection between the injury and the conduct complained of; and (3) it is likely that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "At the pleading stage, [plaintiff]'s burden [is] 'clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute.'" *Oetting v. Norton*, 795 F.3d 886, 889 (8th Cir. 2015) (citing *Warth v. Seldin*, 422 U.S. 490, 518 (1975)). "[A] court deciding a motion under Rule 12(b)(1) must distinguish between a 'facial attack' and a 'factual attack.'" *Branson Label, Inc. v. City of Branson, Mo.*, 793 F.3d 910, 914 (8th Cir. 2015) (citation and internal marks omitted). A facial attack challenges the sufficiency of the pleadings and a court limits its review to the pleadings, viewing allegations in the light most favorable to the nonmoving party. *Id.* A factual attack challenges the factual basis for jurisdiction, regardless of the allegations made, and requires the court to consider matters outside the pleadings. *Id.* at 914-15.

Defendants do not specifically say whether they are attacking the pleadings or the underlying facts; however, the wording of their arguments leads the Court to conclude Defendants intended a facial attack.[2] Defendants argue the First Amended Complaint does not allege facts that show TPI is the proper party to bring this suit because Trading Places

---

[2] Even if the Court determined this was a factual attack, TPI has provided documentation which shows the corporation was converted to an LLC in late 2010. (Doc. 26-1.) Thus, the Court's decision would remain the same.

3

International, Inc. is a party to the Management Agreement and the Sub-Management Agreement, not TPI. Therefore, Defendants contend TPI has not established it has standing to enforce the agreements.

A review of the First Amended Complaint and the attached agreements shows standing has been properly plead and Defendants' argument is without merit. TPI alleges it was a party to the agreements. (Doc. 19, ¶¶ 17, 22.) Further, while TPI is not the named party in the Management Agreement and Sub-Management Agreement, the Amendment shows that TPI is the same entity as Trading Places International, Inc. (Docs. 19-4, p. 1.) For these reasons, the Court finds TPI has properly alleged standing to enforce the contracts at issue and denial of Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction is proper.

## B. Count III – Tortious Interference

Dismissal under Federal Rule of Civil Procedure 12(b)(6) is proper where the complaint fails to state a claim upon which relief can be granted. *Cook v. ACS State & Local Solutions, Inc.*, 663 F.3d 989, 992 (8th Cir. 2011). The complaint must allege facts sufficient to "state a claim to relief that is plausible on its face." *Walker v. Barrett*, 650 F.3d 1198, 1203 (8th Cir. 2011) (quoting *O'Neill v. Simplicity, Inc.*, 574 F.3d 501, 503 (8th Cir. 2009)). To sufficiently plead a plausible claim, the factual content of the claim must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Horras v. Am. Capital Strategies*, 729 F.3d 798, 801 (8th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Labels and conclusions," "formulaic recitations of the elements of a cause of action," and "naked assertion[s] devoid of further factual enhancement" are not sufficient pleadings to survive a motion to dismiss. *Id.* (quoting *Iqbal*, 556 U.S. at 678). In ruling on a motion to dismiss, the "court accepts as true all factual allegations but is not bound to accept as

true a legal conclusion couched as a factual allegation." *Cook*, 663 F.3d at 992 (quotations omitted). Finally, the court must construe all reasonable inferences in favor of the plaintiff. *Palmer v. Ill. Farmers Ins. Co.*, 666 F.3d 1081, 1083 (8th Cir. 2012).

Defendants' Motion to Dismiss Count III asserts that because Summerwinds was a party to the Sub-Management Agreement, it cannot have interfered with the contract between Stormy Winds and TPI as alleged in Count III. The parties do not dispute the basic premise that "[w]here the defendants are parties to the contract, the appropriate claim is breach of contract, not tortious interference." *Gill v. Farm Bureau Life Ins. Co. of Missouri*, 856 S.W.2d 96, 100 (Mo. Ct. App. 1993). However, in this case the parties' do not agree on which contract governs the rights and obligations of the parties. TPI argues that the controlling contractual document is the Amendment, which sets forth the December 31, 2017 termination date. (Doc. 19-4.) Because Summerwinds is not a party to the Amendment, TPI contends a tortious interference claim is viable. Defendants contend the Sub-Management Agreement controls and because Summerwinds was a party to that agreement only a breach of contract claim is appropriate.

Viewing the allegations in the light most favorable to Plaintiff, the Court agrees that Summerwinds is a third party to the Amendment and therefore could be liable for tortious interference. While the tortious interference claim would fail if the Sub-Management Agreement controls, at this point in the litigation, the Court cannot conclude which agreement controls. Therefore, the Court cannot conclude that the tortious interference claim fails as a matter of law. Defendants' reliance on *Oliver v. Ford Motor Credit Co., LLC*, is misplaced because the only contract at issue in that case was between Oliver and Ford. 437 S.W.3d 352, 360 (Mo. Ct. App. 2014). Oliver claimed that it had an expectancy created by Ford and it was interfered with by Ford. *Id.* Similarly, in *Lick Creek Sewer Systems, Inc. v. Bank of Bourbon* plaintiffs alleged the

bank interfered with two deeds of trust between the bank and the plaintiffs. 747 S.W.2d 317, 322 (Mo. Ct. App. 1988). There were no other contracts at issue. Here, there is a plausible basis for TPI to allege it had an expectancy created by Stormy Point under the Amendment. If Summerwinds interfered with that expectancy then Summerwinds is a third party and TPI can allege tortious interference. For these reasons, the Court finds denial of Defendants' Motion to Dismiss Count III is appropriate.

### III. CONCLUSION

Accordingly, Defendants' Motion to Dismiss For Lack of Subject-Matter Jurisdiction and/or Failure to State a Claim, (Doc. 21), and Defendants' Motion to Dismiss Count III for Failure to State a Claim, (Doc. 23), are **DENIED**.

**IT IS SO ORDERED.**

/s/ Beth Phillips
BETH PHILLIPS, JUDGE
UNITED STATES DISTRICT COURT

DATE: November 17, 2015