**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF MISSOURI**
**SOUTHERN DIVISION**

| | |
|---|---|
| TRADING PLACES INTERNATIONAL, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 6:15-cv-03092-BP |
| | ) |
| SUMMERWINDS RESORT SERVICES, LLC, | ) |
| ET AL., | ) |
| | ) |
| Defendants. | ) |

**ANSWER AND COUNTERCLAIMS OF DEFENDANTS**
**SUMMERWINDS RESORT SERVICES, LLC AND STORMY POINT VILLAGE –**
**PHASE III PROPERTY OWNERS ASSOCIATION, INC.**

For their answer and counterclaims to Plaintiff Trading Places International, LLC's ("TPI") First Amended Complaint, Defendants Summerwinds Resort Services, LLC ("Summerwinds") and Stormy Point Village – Phase III Property Owners Association, Inc., (hereinafter the "Association") files its First Amended Counterclaims Against Plaintiff/Counterclaim Defendant Trading Places International, LLC (hereinafter "TPI"). For its First Amended Counterclaim, the Association states as follows:

<u>ANSWER</u>

1.    Defendants admit that TPI is a California limited liability company, but is without sufficient information or belief to admit or deny the remaining allegations contained in paragraph and, therefore, deny them.

2.    Defendant is without sufficient information or belief to admit or deny the allegations contained in paragraph 2 and, therefore, deny them.

3.    Admit.

4. Defendants admit that for purposes of diversity jurisdiction, Summerwinds is a citizen of Missouri.

5. Defendants admit that the Association is a nonprofit corporation organized and existing under Missouri law, and that its corporate headquarters and principal place of business is located in the State of Missouri.

6. Admit.

7. Defendants admit that they may be served through their registered agent Joshua Neally.

## Jurisdiction and Venue

8. Admit that this is an action for declaratory relief and, alternatively, anticipatory breach of contract and tortious interference, but Defendants are without sufficient information or belief to admit or deny the remaining allegations contained in paragraph 8 and, therefore, deny them.

9. Defendants admit that this case involves a controversy in excess of $75,000, exclusive of interest and costs, but are without sufficient information or belief to admit or deny the allegations regarding complete diversity of citizenship in that Defendants do not possess sufficient information regarding TPI's citizenship, such that Defendants must deny said allegations.

10. Defendants admit that venue is proper in this judicial district.

11. Defendants admit that venue is proper in this judicial district, but are without sufficient information or belief to admit or deny the remaining allegations contained in paragraph 11 as to whether a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this judicial district and, therefore, deny them.

12.     Defendants admit that venue is proper in this judicial district.

**Generally Applicable Facts**

13.     Admit that Stormy Point Village Resort is a planned unit development timeshare resort located in Stone County, Missouri.

14.     Admit.

15.     Defendants admit generally the allegations contained in paragraph 15, but state that the Premier Access Agreement speaks for itself and is the best evidence thereof.

16.     Defendants admit that the Premier Access Agreement contemplated an initial term of five years, but state that the Premier Access Agreement speaks for itself and is the best evidence thereof and, therefore, deny the allegations contained in paragraph 16 to the extent they are inconsistent with the terms of the Premier Access Agreement.

17.     Defendants admit that on or about January 1, 2008, TPI's predecessor in interest, Trading Places International, Inc. ("TPI Inc.") and the Association entered into a management Agreement, a copy of which is attached to Plaintiff's Amended Complaint as Exhibit B. Defendants deny all remaining allegations contained in paragraph 17.

18.     Defendants admit that Paragraph 1 of the Terms and Conditions of the 2008 Management Agreement provides that the Association engaged TPI Inc. to serve as the exclusive managing agent for the "Project" as contemplated by the declarations. Defendants further state that the terms of the 2008 Management Agreement speak for themselves and are the best evidence thereof. Defendants deny allegations that are inconsistent with the terms of the 2008 Management Agreement.

19.     Defendants admit that the 2008 Management Agreement contemplated that TPI Inc. would serve as Manager of certain aspects of the Association's operations, and that the

initial term of the agreement was five years, and that the agreement contains automatic renewal terms. However, Defendants deny that the 2008 Management Agreement contemplated or was intended that TPI Inc. serve as the sole exclusive Manager of the Association or the entire resort. Defendants further state that the terms of the 2008 Management Agreement speak for themselves, and deny any allegations that are inconsistent with the terms of the 2008 Management Agreement and/or the course of conduct between the parties.

20. Deny.

21. Deny.

22. Defendants admit that on or about July 20, 2010, an Amended and Restated Sub-Management Agreement (the "Sub-Management Agreement") was made and entered into by and between TPI Inc. and Summerwinds Resort Management Company, LLC (misnamed in the Sub-Management Agreement as Summerwinds Resort Services, LLC), and that a copy of the Sub-Management Agreement is attached to the Amended Complaint as Exhibit C. Defendants further admit that the Sub-Management Agreement amended and restated the 2008 Management Agreement, such that the 2008 Management Agreement was merged into and superseded by the 2010 Sub-Management Agreement.

23. Defendants state that paragraph 1 of the Terms and Conditions of the Su-Management Agreement contemplate that TPI Inc. was engaged to serve as the exclusive manager for certain aspects of the Association's operations, but deny that the agreement contemplated TPI Inc. serving as the exclusive manager for all of the Association's business or for the entire resort. Defendants further state that the terms of the 2010 Sub-Management Agreement speak for themselves and are the best evidence thereof and, therefore, deny all allegations that are inconsistent with the terms of the agreement and/or the course of conduct

between the parties.

24. Defendants admit that the Sub-Management Agreement could automatically renew for a five year renewal term pursuant to the provisions of Section 3.1(b) of the agreement, unless the agreement was terminated earlier. Defendants further state that the terms of the 2010 Sub-Management Agreement speak for themselves and are the best evidence thereof and, therefore, deny all allegations that are inconsistent with the terms of the agreement.

25. Defendants are without sufficient information or belief to admit or deny the allegations contained in paragraph 25 and, therefore, deny them.

26. Defendants are without sufficient information or belief to admit or deny the allegations contained in paragraph 26 and, therefore, deny them.

27. Defendants are without sufficient information or belief to admit or deny the allegations contained in paragraph 27 and, therefore, deny them.

28. Defendants are without sufficient information or belief to admit or deny the allegations contained in paragraph 28 and, therefore, deny them.

29. Defendants admit that on or about November 25, 2012, TPI and the Association executed a document titled "Amendment to Management Agreement," a copy of which is attached to Plaintiff's Amended Complaint as Exhibit D. Defendants admit that the Recitals to the 2012 Amendment reference "that certain Management Agreement effective as of January 1, 2008." Defendants further admit that the 2012 Amendment purported to amend the 2008 Management Agreement (which was invalid and/or no longer existed) to extend its terms until December 31, 2017. Defendants further state that the terms of the 2012 Amendment speak for themselves and are the best evidence thereof. Defendants deny all allegations contained in paragraph 29 that are inconsistent with this answer.

30.     Defendants admit that on or about November 27, 2012, TPI, the Association and an entity identified as VPG Partners, LLC executed a three-page Amendment to the Premier Access Agreement.  Defendants admit that the terms of the 2012 Amendment to the Premier Access Agreement purported to extend the term of the Premier Access Agreement to "December 31, 2014, unless terminated sooner … or extended by mutual agreement of the Parties."

31.     Defendants admit that on January 9, 2015, Joseph Patrick Joyce, President of Summerwinds Resort Services, LLC and the Association sent TPI a letter providing the notice of non-renewal allowed under Paragraph 3.1(b) and 3.3 of the Sub-Management Agreement. Defendants state that the terms of Mr. Joyce's letter speak for themselves.  A copy of Mr. Joyce's January 9, 2015, letter is attached as Exhibit E to Plaintiff's Amended Complaint.

32.     Admit.

33.     Defendants Admit that on or about January 12, 2015, TPI's Senior Vice President and General Counsel, Victoria J. Kincke, sent a letter to Heartsill Ragon, III, in which she addressed, among other things, Mr. Joyce's January 9, 2015 notice letter.  Defendants state that a copy of Ms. Kincke's letter is attached to Plaintiff's Amended Complaint as Exhibit G. Defendants further state that the terms of Ms. Kincke's letter speak for themselves.

34.     Defendants admit that in her January 12, 2015 letter, Ms. Kincke disputed the effectiveness of the notice of non-renewal that Mr. Joyce sent on January 9, 2015.  Defendants state that the letter speaks for itself and, therefore, deny all allegations inconsistent with Mr. Kincke's letter.

35.     Denied.

36.     Denied.

37. Defendants are without sufficient information or belief to admit or deny the allegations contained in paragraph 37 and, therefore, deny them.

38. Denied.

39. Defendants admit that the Association has terminated TPI as Manager of the Association for cause, and that TPI is no longer serving as Manager of the Association. Defendants further admit that the Association has and is hereby filing counterclaims against TPI for TPI overcharging the Association for management fees and Premier Access fees. Defendants deny all allegations contained in paragraph 39 that are inconsistent with this answer.

**Count I: Declaratory Judgment Against Both Defendants**

40. Defendants restate their answers to each of the preceding paragraphs as if fully set forth herein.

41. Defendants admit that a justiciable controversy exists between the parties regarding their respective rights and obligations under the operative management agreement and the Premier Access Agreement. Defendants deny all remaining allegations contained in paragraph 41.

42. Denied. In further answer, Defendants state, however, that TPI has been properly terminated as Manager of the Association for cause, such that the management agreement is terminated and TPI has no further right to serve as Manager of the Association.

43. Defendants admit that there is a controversy concerning the parties' respective rights and obligations under the management agreement that is ripe for determination, but Defendants deny all remaining allegations contained in paragraph 43.

44. Denied.

45. Denied.

46.     Denied.

47.     Denied.

48.     Denied.

49.     Defendants admit that both the 2008 Management Agreement and the 2010 Sub-Management Agreement contain a prevailing party attorneys' fee clause.

WHEREFORE, Defendants pray that the Court dismiss Plaintiff's claim for declaratory judgment, and/or enter a judgment declaring that TPI was lawfully and properly terminated as Manager of the Association for breach of its contractual and fiduciary duties to the Association, that the operative management agreement has been terminated, that Plaintiff has sustained no damages, that Plaintiff has overcharged the Association and damaged the Association in an amount to be proven at trial, and awarding Defendants their costs, expenses and reasonable attorneys' fees, and for such other and further relief as the Court deems just and proper.

### Count II: Anticipatory Breach of Contract (Against the Association)

50.     Defendants restate their answers to each of the preceding paragraphs as if fully set forth herein.

51.     Defendants Admit that the 2010 Sub-Management Agreement constitutes a valid contract between TPI Inc. and the Association.  Defendants are without sufficient information or belief to admit or deny the remaining allegations contained in paragraph 51 and, therefore, deny them.

52.     Denied.

53.     Denied.

54.     Denied.

55. Defendants admit that both the 2008 Management Agreement and the 2010 Sub-Management Agreement contain a prevailing party attorneys' fee clause.

WHEREFORE, Defendants pray that the Court dismiss Plaintiff's claim for Anticipatory Breach of Contract, and award Defendants their costs, expenses and reasonable attorneys' fees, and for such other and further relief as the Court deems just and proper.

## Count III: Tortious Interference (Against Summerwinds)

56. Defendants restate their answers to each of the preceding paragraphs as if fully set forth herein.

57. Defendants Admit that the 2010 Sub-Management Agreement was a valid contract. Defendants are without sufficient information and belie to admit the remaining allegations contained in paragraph 57 and, therefore, deny them.

58. Defendants admit that TPI had a business relationship with the Association, but that relationship effectively ended with TPI's termination for cause.

59. Defendants admit that Summerwinds Resort Services, LLC knew that TPI, Inc. was engaged to serve as Manager of certain aspects of the Association's operations. Defendants deny all remaining allegations that are inconsistent with this answer.

60. Denied.

61. Denied.

62. Denied.

WHEREFORE, Defendants pray that the Court dismiss Plaintiff's claim Tortious Interference, and award Defendants their costs, expenses and reasonable attorneys' fees, and for such other and further relief as the Court deems just and proper.

## AFFIRMATIVE DEFENSES APPLICABLE TO ALL COUNTS

In further answer and as for their affirmative defenses applicable to all counts, Defendants state as follows:

A.      Plaintiff has failed to state a claim for which relief may be granted for Declaratory judgment in that Plaintiff has failed to plead facts establishing that: (i) it is a proper party to the operative management agreement; (ii) that Plaintiff has no adequate remedy at law; (iii) that Plaintiff will suffer irreparable harm; and (iv) Plaintiff has been properly terminated as Manager for cause, such that the management agreement has been terminated and Plaintiff has no further right to serve as the Manager for the Association.

B.      Plaintiff has failed to state a claim for which relief may be granted for Anticipatory Breach of Contract in that: (i) Plaintiff has failed to plead facts demonstrating that it is a proper party to the operative contract; (ii) the January 9, 2015 notice of non-renewal was a contractually permitted and proper notice; (iii) Plaintiff was first to breach the management agreement by its wrongful actions and conduct described in Defendant's counterclaims below, which are incorporated herein by reference; and (iii) Plaintiff continued to serve as Manager of the Association and has been paid all monies owed under the Management Agreement for its services through the date Plaintiff was terminated for cause, effective the end of September 2015, such that Plaintiff cannot established it has sustained any damage.

C.      Plaintiff has failed to state a claim for which relief may be granted for Tortious Interference with Contract in that: (i) Plaintiff has not established it is a valid party to any contract at issue; (ii) Plaintiff has not established the existence of a valid contractual interest or business expectancy; (iii) the January 9, 2015 notice letter was a contractually permitted notice that did not interfere with any right or interest of Plaintiff; (iv) Plaintiff has not sustained any

damage; (v) Plaintiff has not pleaded facts showing that Summerwinds did not have an economic interest in the management agreement or that Summerwinds lacked justification for sending the January 9, 2015 notice letter as permitted under the contract; (vi) Plaintiff has not pleaded facts showing that Summerwinds used improper or unlawful means to interfere with Plaintiff's claimed contractual rights or valid business expectancy; (vii) Plaintiff was first to breach the management agreement and Premier Access Agreement, has breached its contractual and fiduciary duties to the Association, has damaged the Association, and was properly terminate for cause; and (viii)  Summerwinds has an economic interest in the management and affairs of the Association, such that any alleged interference was justified and not tortious.

D.      Plaintiff has no standing to assert a cause of action for breach of contract because it is, upon information and belief, as described in Plaintiff's motion to dismiss, not a party to the operative Management Agreement.

E.      The Sub-Management Agreement is void or voidable for failure of consideration.

F.      Plaintiff's claims are premature and otherwise barred due to the fact that Plaintiff and was properly terminated for cause as Manager of the Association, such that Plaintiff has no further rights to continue to serve as Manager and no claim for damages.

G.      Plaintiff's claims are barred by Plaintiff's unclean hands as described in the Association's counterclaims below, which are incorporated herein by reference.

H.       Defendants are entitled to a credit and/or set-off of any and all amounts that Plaintiff has overcharged the Association under the management agreement and Premier Access Agreement, and/or which Defendants may obtain by way of judgment on the counterclaims contained herein.

I.      Plaintiff's claims are barred because Plaintiff has failed to join all necessary parties to its cause of action.

J.      Plaintiff's claims are barred because was first to materially breach the management agreement and was properly terminated for cause, such that Plaintiff has no further right to serve as the Manager of the Association, and Defendants ow no further obligation to employ or pay Plaintiff under the management agreement.

K.      Plaintiff's claims are barred because: (i) Plaintiff has not pleaded facts showing that it properly succeeded to the rights of Trading Places International, Inc. and/or that Plaintiff obtained the consent of Summerwinds to any assignment of the management contract as required under paragraph 12 of the 2010 Sub-Management Agreement; and (ii) the 2012 Amendment to the Management Agreement was executed and/or agreed to by Summerwinds as required under the terms of paragraph 10 of the 2010 Sub-Management Agreement, such that the 2012 purported amendment is invalid and unenforceable.

## COUNTERCLAIMS

For its counterclaims against Plaintiff/Counterclaim Defendant Trading Places International, LLC, Defendant/Counterclaimant Stormy Point Village – Phase III Property Owners Association, Inc. states as follows:

1.     The Association is a nonprofit corporation duly organized and existing under the laws of Missouri, with its principal place of business located in Branson, Missouri.

2.     For purposes of diversity jurisdiction, the Association is a resident of Missouri.

3.     TPI is, upon information and belief as alleged in TPI's Amended Complaint, a California limited liability company with its principal place of business in the State of California; and, upon information and belief, the sole member of TPI is a Florida entity and citizen of Florida.

4.     TPI's residence for purposes of diversity jurisdiction is Florida and/or California.

5.     Upon information and belief as alleged in TPI's Amended Counterclaim, TPI is the successor in interest to Trading Places International, Inc. (a California corporation) by way of corporate conversion under California law, such that TPI is the proper party in interest to the various management agreements at issue in this lawsuit.

6.     The amounts in controversy exceed $75,000, and upon information and belief, exceed $500,000, and Jurisdiction is proper pursuant to 28 U.S.C. §1332(a),

7.     Venue is proper in this judicial district under 28 U.S.C. §1391(b)(2) since a substantial part of the events and omissions giving rise to the claims herein occurred in this judicial district.

8.     Venue is further proper in this judicial district because the counterclaims asserted herein arise from and relate to the same agreements, and rights and obligations of the parties'

under those agreements, that form the basis for Plaintiffs' claims set forth in TPI's First Amended Complaint, and since TPI has already filed suit against the Association in this case in this judicial district, TPI has consented to venue in this district.

9.      On January 1, 2008, TPI's predecessor, Trading Places International, Inc. entered into a Premier Access Resort Affiliation Agreement with the Association and the developer of Stormy Point Village (the "Premier Access Agreement").  A true and correct copy of the Premier Access Agreement is attached hereto and incorporated herein by reference as **Exhibit D**.

<strong>The Association Management Agreement</strong>

10.      On or about January 1, 2008, TPI's predecessor, Trading Places International, Inc. was also engaged to serve as manager for the Association.

11.      From 2008 to 2010, Trading Places International, Inc. performed management duties for the Association pursuant to a Management Agreement dated January 1, 2008, which was prepared by Trading Places International, Inc. (the "Original Management Agreement").

12.      From the beginning of the relationship, it was understood and intended by the parties that on-site management of the Association would not be the responsibility of Trading Places International, Inc.   In fact, TPI has never performed on-site management for the Association.

13.      On or about July 20, 2010, Trading Places International, Inc. entered into an Amended and Restated Sub-Management Agreement with the Association and the Association's Manager Summerwinds Resort Management Company, LLC (misidentified as Summerwinds Resort Services, LLC).   A true and accurate copy of the Amended and Restated Sub-Management Agreement is attached hereto as **Exhibit A**.

14.     By its express terms, the Amended and Restated Sub-Management Agreement amended and restated the Original Agreement from 2008, such that the Amended and Restated Sub-Management Agreement superseded the Original Agreement.

15.     Pursuant to the terms of the Amended and Restated Sub-Management Agreement, Trading Places International, Inc. was engaged as the Sub-Manager for the Association and it agreed to accept said appointment and to undertake to perform all of the services and responsibilities set forth in the Amended and Restated Sub-Management Agreement and to comply with all provisions of the agreement.

16.     Upon information and belief, on or about November 30, 2010, Interval International Leisure Group acquired all of the equity in Trading Places International, Inc. and the corporation was converted to a limited liability company, now known as TPI.

17.     As Sub-Manager for the Association, TPI was responsible for management of the finances of the Association, including budgeting, reserve studies, paying of certain bills, audits, and financial reporting.

18.     Due to the nature of its relationship with the Association, and the trust that was placed in TPI to manage the financial affairs and other affairs of the Association, TPI owed fiduciary duties to the Association.

19.     Pursuant to Section 3.2 of the Amended and Restated Sub-Management Agreement, the agreement may be terminated prior to the natural expiration of any term, by either party, at any time for cause, provided that, if the cause constitutes a breach or default of the agreement which is capable of being cured, such breach or default shall not have been cured within thirty (30) days following written notice of such breach or default.

20. Pursuant to the terms of Section 6.2 of the Amended and Restated Sub-Management Agreement, TPI was to be compensated as follows:

(a) Sub-Manager's management fee shall be $1.50 per owner per month, or three thousand, three hundred ninety-two dollars ($3,392.00), whichever is greater.

(b) Financial and accounting services fees shall by $1.10 per owner per month, or two thousand, four hundred sixty-five dollars ($2,465.00), whichever is greater.

(c) Reservations services fees shall be $2.00 per owner per month, or four thousand, one-hundred forty-three dollars ($4,143.00), whichever is greater.

21. In a purported effort to simplify the fee calculation process, Section 6.3 of the Amended and Restated Sub-Management Agreement further provided that "Sub-Manager will combine the fees in sections 6.[2](a)-(c), into one fee.[1] Summerwinds agrees to pay Sub-Manager Ten thousand dollars ($10,000.00) per month or $5.50 per owner per month whichever is greater."

22. However, Section 6.3 erroneously calculated the total per owner fee, in that the calculation for the monthly management fees is $10,000.00 per month or $4.60 per owner per month, whichever is greater, as intended by the parties and as consistent with the fee structure set forth in Section 6.2 of the agreement.

23. Upon information and belief, TPI has overcharged the Association for its management fees since 2008 when it was engaged to manage the Association.

24. TPI never disclosed or reported to the Association or its board of directors how TPI calculated the monthly management fees it charged to and collected from the Association, such that the Association has not had the ability to verify the fees charged by TPI and has not, until recently, had reason to know that TPI was, in fact, overcharging the Association.

---

[1] The first sentence of Section 6.3 of the Amended and Restated Sub-Management Agreement erroneously refers to "sections 6.4(a)-(c)" as opposed to sections 6.2(a)-(c).

25.     TPI's financial reports and audits for the Association were done improperly in that they did not report any information showing how TPI charged its management fees, did not verify TPI's management fee charges and reported that the developer owed the Association approximately $1,000,000, when, in fact that was not the case. TPI's improper audit caused the developer to engage its own independent audit, which revealed TPI's accounting and audit was incorrect, and led to additional investigation that caused the Association's board of directors to believe that TPI has been overcharging the Association since 2008.

26.     For example, TPI's maximum fee for 2009 was capped at $120,000.00 based on the number of owners with use time that the Association had at the time. However, the financial reports TPI prepared for the Association show that TPI charged the Association $181,959.00 in management fees, revealing that TPI over charged the Association for 2009.

27.     Based on the limited financial information available to the Association, it is also believed that TPI over charged for 2008 and 2010 in the same way it overcharged for 2009.

28.     In addition to the over charges that TPI made in the first few years of its management, upon information and belief, TPI has also improperly charged the Association for services it failed to provide and/or charged the Association at a higher rate than was intended by the parties under the terms of the management agreement.

29.     In response to the Association's notice of default sent to TPI on August 25, 2015, TPI's President and CEO, Loren Gallagher, confirmed that TPI has used $5.50 per owner per month as the basic "annual" billing rate. However, as mentioned above, the total fee should have been capped at no more than $4.60 per owner per month as set forth in the fee schedule and as intended by the parties.

30.     In addition, through its recent investigations into the management fees charged by TPI, the Association has been unable to tie any of the fees reported in the financial statements prepared by TPI for the Association to any calculation of fees that would be permitted under the terms of the management agreement.

31.     Rather, based on the Association's analysis of the roster reconciliations provided by TPI and the financial reports submitted by TPI, it appears that TPI has charged the Association not only for reservations and financial services, but also for management services, even though TPI has never provided on-site management.

32.     Thus, upon information and belief, TPI has over charged the Association for management services it has never provided.

33.     Several years ago, TPI's Controller discovered that the fee provision contained in Section 6.3 of the Amended and Restated Sub-Management Agreement contradicted the controlling fee schedule set forth in Section 6.2 of the agreement.

34.     Upon information and belief, TPI's Controller advised TPI management of the contradiction and asked management what dollar amount to bill the Association.

35.     Upon information and belief, TPI's ownership directed the Controller to continue to bill the Association using the $5.50 per owner fee, rather than the $4.60 maximum fee provided by the contract and intended by the parties.

36.     As the Sub-Manager and fiduciary for the Association, TPI had a contractual and fiduciary obligation to inform the Association and its board of directors of the overcharges and contradiction in the contract and to account to the Association for its overcharges.

37.     However, TPI deliberately chose for its own benefit and profit to conceal the information from the Association and continued to overcharge its management fees to the Association in breach of its obligations and to the detriment and damage of the Association.

38.     TPI continued to conceal its overcharging in its financial reporting to the Association so that TPI could continue to collect management fees it was not owed.

39.     TPI's conduct is breach of contract and breach of its fiduciary duties and constitutes a fraud upon the Association.

40.     The Association has never been given information showing how TPI charged its management fees on a monthly basis and never received any documentation or accounting to allow the Association to verify the management fees that TPI has charged.

41.     The Association has made multiple demands in recent months for TPI to provide a full accounting to the Association of the management fees it charged and collected from the Association, but TPI has failed to provide the requested information and accounting, thereby breaching its contractual and fiduciary duties to the Association.

42.     On August 25, 2015, the Association sent TPI a Notice of Default, advising TPI that it was in breach and default of the Amended and Restated Sub-Management Agreement, for among other things, its apparent overcharging of its management fees.  The notice requested TPI to explain how it calculated its management fees, demanded a full accounting from TPI for monies it has charged to and collected from the Association, and demanded that TPI reimburse the Association for any amounts it wrongfully collected.  Pursuant to the terms of the Amended and Restated Sub-Management Agreement, TPI was given 30 days to meet the Association's demands and to cure its defaults.  A true and accurate copy of the Notice of Default is attached as **Exhibit B**.

43.     Despite the notice and demand, and the Association's subsequent demands, TPI has failed and/or refused to provide a full accounting of its management fees to the Association, failed to provide the Association with the documentation and information it requested to audit TPI's management fees, and failed to repay the Association for amounts TPI overcharged.

44.     Because TPI failed to respond to the Association's requests for an accounting and information and because TPI failed to repay the Association amounts it overcharged within 30 days of receiving the Notice of Default, on September 28, 2015, the Association sent TPI a Notice of Termination and Change of Service, terminating TPI's services and management agreement for cause.  A true and accurate copy of the Notice of Termination is attached as **Exhibit C**.

45.     Pursuant to the terms of the Amended and Restated Sub-Management Agreement, as a result of its termination, TPI has an obligation to preserve and turn-over to the Association all of the Association's funds, documents and data in TPI's possession.

46.     The Association has requested that TPI cease withdrawing any further management fees and turn over all of the Association's funds, documents and data to the Association, but TPI has failed and refused to do so.

47.     In fact, in a brazen disregard for its fiduciary duties and the rights of the Association, TPI has continued to charge its monthly management fees after it was terminated and told to take no further money from the Association's funds.

48.     What's worse is that TPI has continued to charge the Association an inflated and improper fee even though no fee is owed.

49.     In addition, TPI has failed and refused to provide the Association with the funds it needs to pay its operating expenses, which further damaged the Association.  Throughout its

management of the Association, TPI routinely delayed payments to the developer for reimbursement of Association operating expenses.

50.     Since its termination, and despite the Association's continued requests, TPI has still failed and refused to provide the Association with an accounting of TPI's management fees.

51.     TPI has breached its contractual obligation and its fiduciary duties to the Association by:

a.      failing to properly calculate and charge its management fees;

b.      overcharging the Association for management fees it did not provide and/or charging fees at a rate higher than that intended by the parties and the management contract;

c.      failing to inform the Association of the error in the rate of the monthly management fee when TPI discovered it, and, thereafter, deliberately concealing the information from the Association and its board of directors, failing to disclose the information in the Association's financial reports or audits, and intentionally continuing to overcharge the Association management fees TPI knew or should have known were improper and not owed;

d.      failing to full account to the Association when the Association demanded an accounting of TPI's management fees;

e.      failing to provide the Association with all the documentation and information it needs to audit TPI's management fees;

f.      failing to reimburse the Association for amounts TPI wrongfully charged to the Association; and

g.      continuing to mismanage and misappropriate the Association's funds, documents and data after TPI was terminated as the Sub-Manager for the Association.

52.     Without an accounting, it is difficult to calculate with certainty the damages that TPI has caused to the Association by its overcharging and mismanagement of the Association's finances. However, based upon the annual financial reports and roster reconciliations provided to the Association, the Association believes the Association has been overcharged in excess of $500,000 by TPI.

53.     TPI's above-mentioned conduct was done willfully, deliberately, knowingly and in complete disregard to the rights of the Association and its members, such that an award of punitive damages is proper.

### The Premier Access Agreement

54.     Pursuant to the terms of the Premier Access Agreement, TPI was to make available the TPI Premier Access program, as defined in the Premier Access Agreement, to individuals who own Timeshare Intervals at Stormy Point Village Resort.

55.     In general, TPI Premier Access was an exchange program whereby Stormy Point Village Resort owners could exchange their interval/week at Stormy Point Village for a stay at any of a number of other resorts that are affiliated with the TPI Premier Access Program.

56.     Pursuant to Article 3, Section 3.4, of the Premier Access Agreement, the developer was required to make as part of its annual members club budget (maintenance fee) a Premier Access annual membership fee of twenty-five dollars ($25.00) for each owner at Stormy Point Village Resort.

57.     At Stormy Point Village Resort, Phase III owners only owe a maintenance fee for the year in which they have use time. As a result, owners with annual use time must pay an annual maintenance fee, whereas biannual owners must pay every other year and triennial owners every three years.

58.     While all owners are allowed to pay in installments or in advance of their year of use, biannual and triennial owners' maintenance fee is not due until the year of use.

59.     Moreover, a Stormy Point Village owner can only exchange his/her use time with TPI in the year when the owner has use time available at Stormy Point Village and assuming the owner has paid their maintenance fee for that year of use.

60.     Because owners with biannual or triennial use time do not have a right to use or exchange their week until their respective year of use, they are not subject to annual maintenance fees and should not have been subject to annual Premier Access Fees.

61.     Similarly, a Stormy Point Village owner who had either a biannual or triennial week for use at Stormy Point Village could in their year of use bank their week with TPI and then use that week to stay at other TPI affiliated resorts, subject to certain terms and conditions of the program.

62.     While TPI served as the manager for the Association, TPI collected all maintenance fees for the Association, and would collect from the maintenance fees the Premier Access fees due under the Premier Access Agreement.

63.     However, TPI never reported to the Association how it was calculating its Premier Access Fees and did not report to the Association how the Premier Access fees were allocated among annual biannual and triennial owners.

64.     In or around 2013, the Association and developer were receiving complaints regarding the lack of inventory that TPI had available to fulfill its obligations to owners under the Premier Access Agreement.

65.     Darren Abbott, one of the Association's board members met with TPI's ownership to complain about the lack of inventory available under the Premier Access Program

and it was at that time that Mr. Abbott learned that TPI was collecting an annual Premier Access fee from all Stormy Point owners regardless of whether they were an annual, biannual or triennial owner.

66.     Mr. Abbott complained to TPI that biannual and triennial owners should not be billed for Premier Access annually because they have no annual use rights and no maintenance fee is owed on an annual basis by these owners.

67.     Despite these complaints, TPI continued to collect annual Premier Access fees from all Stormy Point owners, regardless of the year in which they have use time and owe their maintenance fee.

68.     Because owners with biannual and triennial use have no right to use their weeks every year, they have no right or ability to exchange their week at Stormy Point Village with TPI's Premier Access program until their respective year of use.  Consequently, biannual and triennial owners only receive half and one-third respectively of the service under the Premier Access Agreement.

69.     Because biannual and triennial owners have one-half and one-third the use rights at Story Point Village and one-half and one-third the exchange privileges under the Premier Access Program, and since they do not owe a maintenance fee until their year of use, these owners should not have been billed an annual $25.00 Premier Access Fee.

70.     Upon information and belief, TPI has collected from the maintenance fees paid to the Association an annual $25.00 from all Stormy Point Owners.

71.     TPI's collection of an annual fee from all owners, including biannual and triennial owners is in violation of the terms of the Premier Access Agreement.

72. TPI's conduct has damaged the Association in the loss of maintenance fees that should not have been collected as Premier Access Fees.

73. Upon information and belief based on the financial reports, annual budgets and roster reconciliations currently available to the Association, the damage to the Association is believed to be in excess of $150,000.00.

## COUNT I
## BREACH OF CONTRACT (MANAGEMENT AGREEMENT)

74. The Association restates each of the allegations in the preceding paragraphs as if fully set forth herein.

75. Pursuant to the terms of the management agreement between the parties, TPI was only entitled to charge fees attributable to the services it provided in accordance with the fee structure set forth in the agreement.

76. In addition, pursuant to the terms of the management agreement, TPI was to properly and faithfully provide financial management services for the Association, which included providing accurate and timely financial reports, audits and reserve studies, and paying operating expenses for the Association.

77. Pursuant to the terms of the management agreement, TPI was also obligated to perform reservation management services for the Association.

78. TPI also had an obligation under the management agreement and because of the fiduciary nature of its relationship with the Association to provide prompt and accurate reporting of information that the Association and its board of directors needed or requested.

79. As the Sub-Manager for the Association, TPI had a duty of loyalty to the Association and the duty to act in the best interests of the Association when conducting the Association's business and affairs and when handling the Association's finances.

80.     TPI also had an obligation under the management agreement to turn-over to the Association all money, documents and data in the Association's possession after TPI's management services were terminated.

81.     TPI has breached is contractual obligations to the Association by overcharging the Association management fees it did not earn and/or was not entitled to charge.

82.     TPI has breached its contractual obligations by failing to timely and accurately report to the Association information that TPI was charged with preparing and reporting, including accurate financial statements and audits.

83.     TPI has breached its contractual obligations by failing to disclose to the Association its overcharging, and by deliberately concealing the overcharging from the Association.

84.     TPI has breached is contractual obligations by failing to keep the Association apprised of accurate owner information.

85.     TPI has breached its contractual obligations by failing to account to the Association for its management fees, failing to provide documentation and information so that he Association can audit TPI's management fees, and failing to reimburse the Association for monies wrongfully charged to the Association.

86.     TPI has breached its contractual obligations by deliberately continuing to charge the Association an improper management fee after TPI was terminated and by failing to turn over to the Association the Association's funds, documents and data.

87.     TPI has failed to perform its contractual obligations in good faith and with that degree of skill and loyalty that a prudent manager/fiduciary would be expected to perform.

88.     As a direct and proximate result of TPI's breach of its contractual obligations, the Association has been damaged and incurred and paid management fees that were not earned and/or owed.  It has also incurred the costs associated with obtaining independent audits and accounting services to correct the deficient prepared by TPI, and the Association has incurred legal fees and expenses associated with TPI's breach of contract and the defense and prosecution of this litigation.

89.     The Association is entitled to recover its reasonable expenses, attorneys' fees and costs associated with this litigation pursuant to the terms of the Amended and Restated Sub-Management Agreement.

90.     Upon information and belief, the Association's damages exceed $500,000 and will be proven at trial after an audit of amounts TPI has collected from the Association.

WHEREFORE, the Association prays that the Court enter judgment in its favor against Trading Places International, LLC on the Association's claim for breach of contract, and award the Association actual damages in an amount to be proven at trial, but which is believed to be in excess of $500,000, together with prejudgment and post-judgment interests, costs, expenses and attorneys' fees, and for such other and further relief as the Court deems just and proper.

## COUNT II
## BREACH OF CONTRACT (PREMIER ACCESS AGREEMENT)

91.     The Association restates each of the allegations in the preceding paragraphs as if fully set forth herein.

92.     Pursuant to the Premier Access Agreement, the Premier Access Fee was only to be paid in conjunction with the maintenance fee paid by each owner.

93. Because TPI charged and collected a $25.00 annual Premier Access fee for all owners regardless of usage or the year in which their maintenance fees were owed/paid, TPI has overcharged the association and breached the Premier Access Agreement.

94. As a direct and proximate result of TPI's breach of its contractual obligations, the Association has been damaged in that TPI has collected more Premier Access Fees from 2008 to present from the maintenance fees paid to the Association that TPI was entitled to be paid.

95. Upon information and belief, the Association's damages are in excess of $150,000, but a full accounting is required to determine the extent of damage to the Association.

WHEREFORE, the Association prays that the Court enter judgment in its favor against Trading Places International, LLC on the Association's claim for breach of contract, and award the Association actual damages in an amount to be proven at trial, but which is believed to be in excess of $150,000, together with prejudgment and post-judgment interests, costs, expenses and for such other and further relief as the Court deems just and proper.

## COUNT III
## BREACH OF FIDUCIARY DUTY

96. The Association restates each of the allegations in the preceding paragraphs as if fully set forth herein.

**a.    Breach of Fiduciary Duty Regarding Management Fee.**

97. As Sub-Manager and due to the nature of its relationship and responsibilities to the Association, TPI owed, and continues to owe, the Association a fiduciary duty of trust, loyalty, fidelity, and a duty to act in good faith and in the bests interests of the Association when managing the Association's finances and affairs and when reporting to and communicating with the Association and its board of directors. TPI also is obligated to be forthcoming and honest with the Association when dealing and reporting to the Association and its board of directors.

98. TPI has breached its fiduciary duties to the Association as described here.

99. As a direct and proximate result of TPI's breach of its fiduciary obligations, the Association has been damaged.

100. TPI's violation of its fiduciary duties and wrongful conduct was done knowingly, intentionally, with malice and/or with reckless disregard to the rights of the Association and its members to whom TPI owed its fiduciary duties, such that TPI's conduct justifies an award of punitive damages.

**b.      Breach of Fiduciary Duty Regarding Premier Access Fees.**

101. TPI has breached its fiduciary duties to the Association as described herein, including by improperly collecting annual Premier Access use fees from the maintenance fees that were paid to the Association and managed by TPI, even after the board of directors admonished TPI for doing so.

102. As a direct and proximate result of TPI's breach of its fiduciary obligations, the Association has been damaged.

103. TPI's violation of its fiduciary duties and wrongful conduct was done knowingly, intentionally, with malice and/or with reckless disregard to the rights of the Association and its members to whom TPI owed its fiduciary duties, such that TPI's conduct justifies an award of punitive damages.

WHEREFORE, the Association prays that the Court enter judgment in its favor against Trading Places International, LLC on the Association's claim for breach of fiduciary duty, and award the Association actual damages in an amount to be proven at trial, but which is believed to be in excess of $500,000, punitive damages in an amount that is fair and reasonable, together

with prejudgment and post-judgment interests, costs, expenses and attorneys' fees, and for such other and further relief as the Court deems just and proper.

**COUNT IV**
**FRAUD**

104.     The Association restates each of the allegations in the preceding paragraphs as if fully set forth herein.

**a.      Fraud Regarding Management Fees.**

105.     As Sub-Manager, TPI has prepared financial reports, audits and budgets for the Association and presented them to the Association's board of directors.

106.     TPI's financial reports and audits reported the amount of management fees that TPI charged to the Association but provided no detail as to how the management fees were calculated on a monthly basis.

107.     TPI intended that the Association and its board of directors rely on the financial reporting that TPI provided when the board of directors was approving budgets for the Association, and making other management decisions for the Association.

108.     The financial reporting regarding the management fees charged to the Association was not correct and contained false and misleading information.

109.     Several years ago, TPI discovered that it was charging $5.50 per owner per month when it should have been charging no more than $4.60 per owner per month, and probably less because TPI was charging for management services it did not provide.

110.     However, TPI deliberately and intentionally concealed the information from the Association and its board of directors and continued to wrongfully overcharge and collect its management fees for its own profit to the detriment and expense of the Association.

111.   TPI had a duty to disclose and not conceal the information regarding its overcharging to the Association and its board of directors, but it deliberately failed to do so.

112.   TPI continued to overcharge its management fees and to conceal its overcharging in its financial reporting to the Association and failure to account to the Association.

113.   TPI knew that the financial information it reported to the Association with respect to TPI's management fees was false and misleading and intended that the Association rely upon the information when approving budgets, audits, and tax returns, and when making other financial decisions for the Association.

114.   Because TPI was engaged as the Sub-Manager and was responsible for management of the Association's financial affairs, TPI was in a position of trust and the Association had a right to rely on the information and TPI provided and expected that TPI would faithfully and honestly perform its management services.

115.   The Association and its board of directors relied on the information provided by TPI, as well as TPI's management of the Association's financial affairs, in approving budgets and making other financial and management decisions concerning the Association.

116.   TPI's conduct is fraudulent as to the Association, and, as a direct result of its conduct, the Association has been damaged.

117.   TPI's fraudulent conduct was done knowingly, intentionally, with malice and/or with reckless disregard to the rights of the Association and its members to whom TPI owed its fiduciary duties, such that TPI's conduct justifies an award of punitive damages.

**b.      Fraud Regarding Premier Access Fees.**

118.   As Sub-Manager, TPI has prepared financial reports, audits and budgets for the Association and presented them to the Association's board of directors.

119.    TPI's financial reports and audits reported the amount of fees that TPI charged to the Association but provided no detail as to how these fees were calculated.

120.    When the Premier Access Agreement was negotiated, TPI led the Developer and Board of Directors to believe that that the program would be set-up so that biannual and triennial owners would only be billed a Premier Access Fee in the year in which they had use time and their maintenance fees were owed or paid.

121.    TPI intended that the Association and its board of directors rely on their representations regarding how the Premier Access Program worked in inducing the developer and Association to enter into the Premier Access Agreement and the Management Agreement for the Association.

122.    TPI also intended that the Association rely on the financial reporting that TPI provided when the board of directors was approving budgets for the Association, and making other management decisions for the Association.

123.    The Association relied on TPI's representations and financial reporting when deciding to enter into the Premier Access Agreement and the Management Agreement, when extending the term of the Premier Access Agreement, and when approving budgets and financial reports for the Association.

124.    TPI knowingly and intentionally wrongfully collected annual Premier Access Fees for all owners from the Association's maintenance fees in TPI's care despite the fact that TPI knew or should have known that all owners did not have annual use time and did not owe annual maintenance fees, and it then knowingly concealed this information in its financial reporting to the board of directors for the Association.

125.    Because the way in which TPI prepared the budgets and financial reports for the Association did not reveal and concealed the manner in which TPI was billing owners for the Premier Access fees, the Association had no reason to believe that TPI was charging all owners an annual Premier Access Fee.

126.    It was not until 2013 or later that one of the Association's directors learned during a meeting with TPI ownership that all owners were being billed an annual fee.

127.    Because TPI concealed how its fees were charged from the Association and its board of directors, and since TPI continued to wrongfully overcharge and collect its Premier Access Fees it was not owed even after Darren Abbot complained to TPI about  its billing practice, TPI has deliberately defrauded and damaged the Association.

128.    TPI had a duty to disclose and not conceal the information regarding its billing practices and overcharging to the Association and its board of directors, but it failed to do so.

129.    Because TPI was engaged as the Sub-Manager and was responsible for management of the Association's financial affairs, TPI was in a position of trust and the Association had a right to rely on the representations and information TPI provided and expected that TPI would faithfully and honestly perform its financial management services.

130.    TPI's conduct is fraudulent as to the Association, and, as a direct result of its conduct, the Association has been damaged.

131.    TPI's fraudulent conduct was done knowingly, intentionally, with malice and/or with reckless disregard to the rights of the Association and its members to whom TPI owed its fiduciary duties, such that TPI's conduct justifies an award of punitive damages.

WHEREFORE, the Association prays that the Court enter judgment in its favor against Trading Places International, LLC on the Association's claim for fraud, and award the

Association actual damages in an amount to be proven at trial, but which is believed to be in excess of $500,000, punitive damages in an amount that is fair and reasonable, together with prejudgment and post-judgment interests, costs, expenses and attorneys' fees, and for such other and further relief as the Court deems just and proper.

## COUNT V
## ACCOUNTING

132.    The Association restates each of the allegations in the preceding paragraphs as if fully set forth herein.

133.    Because TPI was the Sub-Manager for the Association and responsible for management of the Association's finances and financial reporting, TPI owed a fiduciary duty to the Association and TPI has duty to fully and faithfully account to the Association for its management of the Association's funds and accounts.

134.    The Association has good cause to request that TPI provide a full accounting as to any management fees, Premier Access fees and other charges that TPI paid itself from the Association's funds.

135.    The Association has made multiple demands for an accounting from TPI, but TPI has failed to provide the Association with any meaningful information.

136.    In order to protect and preserve the funds of the Association, which is a nonprofit corporation, funded in large part through the maintenance fees of the Association's members, the Association is entitled to an accounting, so that the Association can audit TPI's management fees, Premier Access Fees and other charges and determine the nature and extent of the Association's damages.

137.    The information needed to properly audit TPI's fees is complex and likely contained in a number of different formats and reports. Because the Association lacks the

information and documentation necessary to calculate the management fees that TPI should have charged, and because such information is in the possession of TPI but TPI refuses to provide the information to the Association, there is a need for discovery to conduct a proper accounting.

138.    Without an accounting of the information and documentation in TPI's possession, the Association cannot verify or account for the management fees, Premier Access Fees and monies that TPI paid itself from the Association's funds, such that the Association has no adequate legal remedies and an accounting is necessary.

WHEREFORE, the Association requests that the Court enter its order and judgment in favor of the Association, granting the Association a full and equitable accounting of all amounts that TPI has charged to and collected from the Association, and compelling TPI to fully account to the Association for all amounts charged to and collected from the Association since TPI was first engaged to manage the Association, and awarding the Association damages in an amount to be proven by the accounting, for prejudgment and post-judgment interest, reasonable attorneys' fees, costs and expenses, and for such other relief as the Court deems just and equitable.

## COUNT VI
## MONEY HAD AND RECEIVED

139.    The Association restates each of the allegations in the preceding paragraphs as if fully set forth herein.

140.    As the Manager or Sub-Manager of the Association, TPI held a position of trust and charged with management of the financial affairs of the Association, including the care of the Association's funds.

141.    TPI used its position as Manager / Sub-Manager to unfairly and/or fraudulently pay itself management fees and Premier Access Fees from the maintenance fees paid by the

owners to the Association, which fees are to be used for the benefit of the Association and its member owners.

142.    The circumstances under which TPI wrongfully paid itself management fees and Premier Access fees, as described herein, constitute a breach of fiduciary duty and/or breach of trust, and were otherwise unjust and inequitable, causing damage to the Association and its members, such that TPI has been unjustly enriched to the detriment of the Association.

WHEREFORE, the Association requests that the Court enter its order and judgment in favor of the Association and against TPI on the Association's Claim for Money Had and Received,  compelling TPI to fully account to the Association for all amounts charged to and collected from the Association since TPI was first engaged to manage the Association, and awarding the Association damages in an amount to be proven by the accounting for all money wrongfully charged to and collected from the Association by TPI, for prejudgment and post-judgment interest, reasonable attorneys' fees, costs and expenses, and for such other relief as the Court deems just and equitable.

## COUNT VII
## UNJUST ENRICHMENT

139.    The Association restates each of the allegations in the preceding paragraphs as if fully set forth herein.

140.    As the Manager or Sub-Manager of the Association, TPI held a position of trust and charged with management of the financial affairs of the Association, including the care of the Association's funds.

141.    When negotiating the Premier Access Agreement, TPI represented that owners would be billed the Premier Access Fee only during the year in which they had use time and their maintenance fee was due.

142.     Despite these representations, TPI charged the Association Premier Access fees for each owner annually, thereby collecting the same annual fee from owners with biannual and triennial use and exchange rights as the owners who had annual use time.

143.     In addition to overcharging Premier Access Fees for owners who had no annual use time, TPI also failed to fulfill its obligations to provide adequate inventory at its affiliated resorts, thereby failing to provide Stormy Point Village owners with the benefit for the Premier Access program they paid for.

144.     TPI's overcharging of Premier Access Fees was done at the expense and to the detriment of the Association and its members and has caused damage to the Association in the loss of maintenance fees that would have otherwise been available to fund the operations or reserves of the Association and to meet the Association's other obligations.

145.     In addition to collecting unjust Premier Access Fees, TPI also wrongfully and unjustly charged and collected management fees in excess of that owed to TPI, thereby depriving the Association of further funds and resources it would have had to fund its operations, reserve and other obligations.

146.     TPI's wrongful overcharging of management fees was done at the expense and to the detriment of the Association and its members to whom TPI owed a fiduciary duty.

147.     Under the circumstances, it would be unjust for TPI to retain the benefit of the money it wrongfully collected from the Association.

WHEREFORE, the Association requests that the Court enter its order and judgment in favor of the Association and against TPI on the Association's Claim for Unjust Enrichment, compelling TPI to fully account to the Association for all amounts charged to and collected from the Association since TPI was first engaged to manage the Association, and awarding the

Association restitution and/or damages in an amount to be proven by the accounting for all money wrongfully charged to and collected from the Association by TPI, for prejudgment and post-judgment interest, reasonable attorneys' fees, costs and expenses, and for such other relief as the Court deems just and equitable.

HUSCH BLACKWELL LLP

By:      /s/ *Christopher F. Weiss*
      Bryan O. Wade, #41939
      Christopher F. Weiss, # 49314
      901 St. Louis St., Suite 1800
      Springfield, MO 65806
      Office: (417) 268-4000
      Fax No: (417) 268-4040
      bryan.wade@huschblackwell.com
      chris.weiss@huschblackwell.com

Attorneys for Defendants.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing counterclaim was forwarded this 24th day of November 2015 by notification through the court's efiling system to:

James Meadows
Joshua B. Christensen
Lathrop & Gage, LLP
910 East St. Louis Street, Suite 100
Springfield, MO 65806
jmeadows@lathropgage.com
jchristensen@lathropgage.com

Joshua D. Neally
205 Park Central East, Suite 501
Springfield, MO 65806
Joshua@neallylaw.com

/s/ *Christopher F. Weiss*
Attorney