Trading Places International
23807 Aliso Creek Road, Suite 100
Laguna Niguel California  92677

## AMENDED AND RESTATED SUB-MANAGEMENT AGREEMENT

THIS AGREEMENT, made as of the __20__ day of July , 2010, by and between Summerwinds Resort Services, LLC ("Manager" or "**Summerwinds**") and Trading Places International, Inc., a California corporation (the "Sub-Manager"), is as follows:

### RECITALS

A. Stormy Point Village - Phase III Property Owners Association, Inc. (the "**Association**") and Sub-Manager previously entered into that certain Managment Agreement dated as of January 1, 2008 (the "**Prior Agreement**"). The parties hereto hereby agree to amend and restate the Prior Agreement as set forth herein.

B. The Association is the duly constituted governing body of the Stormy Point Resort (the "Project") located at 3940 Green Mountain Drive, Branson, Missouri 65616.

C. Pursuant to the provisions of the Association's Declaration of Covenants, Conditions and Restrictions (the "CC&Rs" or "Declaration"), the Association is responsible for maintaining the common elements and for cleaning, maintenance, furniture repair and replacement, housekeeping service, and general care of the units within the Project. In addition, pursuant to the CC&Rs, the Association is authorized to retain a professional property management organization and to delegate to such organization certain of the Association's powers, duties, and responsibilities.

D. On or about September 25, 2007, the Association and VPG Partners VI, LLC ("VPG") entered into a certain document entitled Stormy Point Village -Phase III Management Agreement pursuant to which VPG agreed to provide certain real property management services on behalf of the Association (the "Original Management Agreement").

E. Paragraph 11 of the Original Management Agreement allows VPG, as manager, to assign and delegate certain of its duties and obligations thereunder to third parties.

F. On or about June 3, 2010, VPG delegated all of its managerial, administrative, operational and other duties assigned to it under the Original Management Agreement to Summerwinds pursuant to the provisions of a certain Delegation and Assumption Agreement (the "Delegation Agreement".

G. Pursuant to the terms of the Delegation Agreement, Summerwinds agreed to assume all of the duties of VPG that are assigned to it under the Original Management Agreement.

**EXHIBIT A**

B. Manager hereby assigns all of its responsibilities to operate the association to Sub-Manager.

C. Sub-Manager is a professional property management organization fully qualified to provide total management services to timeshare resorts such as the Project.

D. The Board of Directors (the "Board") of the Association desires to recognize and acknowledge Sub-Manager as the entity, pursuant to the Original Management Agreement, the Delegation Agreement and this instrument as the party responsible for the management and operation of the Property as contemplated by the Declaration, and Sub-Manager desires to accept such engagement, all on the terms and conditions hereinafter set forth.

THEREFORE, in consideration of the mutual promises, covenants and agreements herein contained, the parties agree as follows:

## TERMS AND CONDITIONS

1. **Engagement of Sub-Manager.** In furtherance of the foregoing, Summerwinds hereby engages Sub-Manager as the exclusive managing agent of the Project as contemplated by the Declaration, and Sub-Manager hereby accepts said appointment and undertakes to perform all of the services and responsibilities herein set forth in such capacity and to comply with all provisions of this agreement. Pursuant to the provisions of Paragraph 11 of the Original Management Agreement and the provisions of the Delegation Agreement, the Association does hereby recognize and acknowledge Sub-Manager as the entity that will be responsible for the performance on behalf of the Association of those tasks and duties that are outlined herein.

2. **Definitions.** In addition to other definitions provided for herein, the terms used herein shall have the same meaning as the meanings attributed thereto in the Declaration.

3. **Term.**

    3.1 **Initial Term And Renewal.** Unless terminated earlier pursuant to Paragraph 3.2 below, the initial term and renewal for this agreement shall be as follows:

    a. **Initial Term.** The initial term of this agreement shall be for a period of five (5) years commencing on the date hereof.

    b. **Renewal.** This agreement shall automatically renew upon expiration of the initial term hereof and each renewal term thereafter for successive additional five (5) year terms unless either party which is not then in material default hereunder shall have given the other party written notice of non-renewal at least ninety (90) days prior to the expiration of the then current term.

**EXHIBIT A**

3.2 **Termination for Cause.** This agreement may be terminated prior to the natural expiration of any term, by either party, at any time for cause provided that, if the cause constitutes a breach or default of this agreement which is capable of being cured, such breach or default shall not have been cured within thirty (30) days following written notice of such breach or default. In the event either party shall dispute a termination by the other pursuant to the provisions of this subparagraph 3.2, the dispute shall be submitted to arbitration in accordance with the commercial arbitration rules of the American Arbitration Association. The fee payable to the American Arbitration Association to initiate the arbitration shall be paid by the party initiating the arbitration. The cost of arbitration, including such fee, shall ultimately be borne as determined by the arbitrator under the previously mentioned commercial arbitration rules.

3.3 **Termination without Cause.** This agreement may be terminated by Summerwinds without cause only by providing notice of non-renewal in accordance with the provisions of subparagraph 3.1(b). Sub-Manager may terminate this agreement at any time without cause only upon written notice of resignation to Association in accordance with subparagraph 3.4.

3.4 **Resignation.** Sub-Manager may resign only upon compliance with the following conditions:

(a) **Records Transfer.** On or before the effective date of resignation designated in Sub-Manager's notice of resignation, which date must be not less than ninety (90) days from the date of notice, or upon such later date that Summerwinds may successfully obtain the services of a substitute managing agent or otherwise reassume property management responsibilities not to exceed one hundred eighty (180) days following the date of notice, Sub-Manager shall turn over all books and records relating to the management and operation of the Project to the successor managing agent or to such other person or entity as Summerwinds may designate.

(b) **Best Efforts.** In the event Sub-Manager's resignation shall be given as provided hereinabove, Summerwinds shall use its best efforts to obtain the services of a responsible management company, or otherwise reassume all property management duties delegated to in under the Delegation Agreement, to provide the Association with services consistent with industry-recognized standards so that Sub-Manager may accomplish the resignation in a timely manner.

To the extent that the Sub-Manager resigns in accordance with those rights herein, Summerwinds agrees to immediately re-assume all managerial duties and obligations that are set forth in the Original Management Agreement.

**EXHIBIT A**

3.5 **Upon Termination.** Upon Termination of this Agreement, for any reason whatsoever, the following shall occur:

(i) The Association and/or Summerwinds, as applicable, shall return to Sub-Manager any and all copies or images of trademarks, trade names, logos or insignias of Sub-Manager or any of its affiliates as well as all copies of forms, manuals, operating procedures, videos or any other items provided to the Association and/or Summerwinds, as applicable, for their use by Sub-Manager, all of which such items are acknowledged and considered by Sub-Manager as being confidential, trade secrets, and privileged property of Summerwinds and its affiliates. The Association and/or Summerwinds, as applicable, shall remove from their computers, and return, all computer software and/or data which is the property of or provided by Sub-Manager. Thereafter, the Association shall make no further direct or indirect use thereof. Any reproduction, in whole or in part or utilization of any such
items both during and after the termination of this Agreement without the express written consent of Sub-Manager is expressly prohibited;

(ii) Notwithstanding the foregoing, it is agreed that data stored by Association and/or Summerwinds in a printed or written format shall remain the property of the Association and/or Summerwinds, as applicable. Upon termination of this Agreement, Sub-Manager shall return to the Association and/or Summerwinds, as applicableall printed, written and computer generated data and reports in Sub-Manager's possession. Sub-Manager shall cooperate with the Association and/or Summerwinds, as applicable, in providing data and information requested by the Association and/or Summerwinds, as applicable, that is maintained by Sub-Manager in a magnetic or optical format. Sub-Manager shall cooperate with and assist Association and/or Summerwinds, as applicable, in the conversion or transfer of such data stored in a magnetic or optical format on a time and materials basis. All said property that is readily available shall be transferred to the Association and/or Summerwinds, as applicable, on the date which is no later than twenty (20) days prior to the termination date of this Agreement in an updated version on or about the transfer date; provided, however, that if Summerwinds is not then substantially current in its payment of the Management Fees and Services Fees due to Sub-Manager, then Sub-Manager's sole obligation shall be to provide the Association and/or Summerwinds, as applicable, with copies of any Association and/or Summerwinds' records, reports or data essential to the Property in their then existing form or format, but the Sub-Manager shall have no obligation to make any compilations or analysis of such information, nor to provide any transition consultation, advice or other services unless or until Summerwinds has first paid all sums then due to Sub-Manager under the terms of this Agreement.

4. **Duties of Summerwinds.**

   4.1 **Cooperation.** Summerwinds shall furnish Sub-Manager with copies of any and all documents connected with the Project which may assist Sub-Manager in carrying out its duties hereunder, including without limitation, the Declaration, the Articles of Incorporation (if applicable) and the Bylaws of the Association, any notices received by the Association or Summerwinds, any rules and regulations promulgated by the Association or Summerwinds, the minutes of previously held meetings of the Board of Directors

**EXHIBIT A**

and owners and any written instruments executed by or on behalf of the Association. Summerwinds shall timely provide Sub-Manager with any information not known to Sub-Manager which may be relevant to Sub-Manager's performance under this agreement. Both Summerwinds and the Association shall fully cooperate with the Sub-Manager regarding Sub-Manager's performance hereunder.

4.2 **Board/Sub-Manager Liaison.** Summerwinds may designate an individual who shall be authorized to deal with Sub-Manager on any matter relative to the management of the Association or the Project. The Sub-Manager will not accept direction or instruction with regard to the management of the Association or the Project from anyone other than such designee.

5. **Duties and Obligations of Sub-Manager.** Summerwinds does hereby delegate to Sub-Manager all operational, administrative and managerial duties and obligations of every nature that were delegated to and assumed by Summerwinds pursuant to the provisions of the Delegation Agreement, which are more fully set forth in the Original Management Agreement. Sub-Manager does hereby assume and agree to perform all such delegated obligations.

6. **Compensation of Sub-Manager.**

   **6.1 Association Management Services.** For the full and faithful performance of the operational and administrative duties provided for herein during the term hereof, Summerwinds agrees to pay to Sub-Manager those a professional management fees as described in section 6.4 below and increased as set forth in section 6.5.

   **6.2** (a) Sub-Manager's management fees shall be $1.50 per owner per month, or three thousand, three hundred ninety-two dollars ($3,392.00), whichever is greater.

   (b) Financial and accounting services fees shall be $1.10 per owner per month, or two thousand, four hundred sixty-five dollars ($2,465.00), whichever is greater.

   (c) Reservations services fee shall be $2.00 per owner per month, or four thousand, one-hundred forty-three dollars ($4,143.00), whichever is greater.

   **6.3 Adjustment of Sub-Manager Compensation.** In an effort to simplify the fee process, Sub-Manager will combine the fees in sections 6.4(a)-(c), into one fee. Summerwinds agrees to pay Sub-Manager Ten Thousand dollars ($10,000.00) per month or $5.50 per owner per month whichever is greater. On a monthly basis, Sub-Manager shall be entitled to additional compensation in proportion to the subsequent increase in the interval units as adjusted for new sales. Such adjustment shall automatically take effect on the first day of the month following the successful closing of the escrow and collection of maintenance fees on new sales for the current year. In the event maintenance fees are waived for whatever reason, VPG agrees to pay the member's management fees.

**EXHIBIT A**

**6.4 Management Firm.** It is specifically understood and agreed that Sub-Manager shall perform all of the services required of it hereunder at no cost and expense whatsoever to itself, but solely at the cost and expense of Summerwinds, VPG, the Association and its members. It is specifically understood that Sub-Manager does not undertake to pay Common Expenses from its own funds and shall only be required to perform its services, and make disbursements to the extent that, and so long as, payments received from Summerwinds, VPG and/or assessments or other revenue, if any, of the Association, are sufficient to pay the costs and expenses of such services and the amounts of such disbursements.

In the event Summerwinds becomes twenty (20) or more days delinquent in the payment of amounts due, Sub-Manager shall have the right to suspend providing any and all services as provided for in this Agreement until such time as the Summerwind's account with Sub-Manager is brought current.

**6.5 Discounts and Rebates.** All discounts and rebates relative to the operation of the Association or Project shall inure to the benefit of the Association.

**6.6 Payment and Solicitation of Employees, Financial Sources, Subagents, etc.; Non-Competition with Sub-Manager.**

Summerwinds, on behalf of itself and its affiliates, each acknowledges and agrees that the current employees, agents, subagents, consultants, sources of financing and other professional resources of Sub-Manager represent a human resources investment and/or an asset of Sub-Manager's business. Accordingly, Summerwinds agrees that it shall not, during the term of this Agreement and within twelve (12) months after the termination hereof, solicit for employment or accept employment of any employee, agent, subagent, consultant, source of financing or other professional resource of Sub-Manager absent the express written consent of Sub-Manager for which such individual or individuals previously worked. In the event of violation by Summerwinds of this covenant regarding solicitation of or acceptance of employment of such employees, agents or consultants, the breaching party shall reimburse to the entity for whom such individual previously worked, as liquidated damages and as reimbursement for retraining and replacement costs, in an amount equal to the salary or other compensation received by such wrongfully solicited or employed individual for the twelve (12) month period immediately preceding termination of such individual's employment by the non-breaching party.

Summerwinds acknowledges that in the course of the activities anticipated hereunder it may be privileged to certain information which would be valuable to any party seeking to submit a proposal to Summerwinds or to the Association's Board of Directors for the provision of management or management-related services which are currently being provided by Sub-Manager and/or its affiliates or agents. During the term of this Agreement and for a period of two (2)

Stormy Point Management Agreement
07/19/10

Page 6 of 11

**EXHIBIT A**

years after its termination, Summerwinds shall not disclose any non-public, privileged or sensitive information to any other party who, to the extent reasonably ascertainable by Summerwinds, may use such information to gain a competitive edge or advantage in seeking to offer such services to Summerwinds. The receipt of all such confidential information shall occur through the receipt of express authorization as provided by the Sub-Manager or any other third party source in possession of such information.

7. **Notices.** Any notice required or permitted hereunder shall be in writing and shall be deemed received when delivered via facsimile transmission, followed on the same day or the next business day by any form of overnight express mail, and addressed as follows:

<u>If to the Summerwinds:</u>
Summerwinds Resort Services, LLC
3940 Green Mountain Drive
Branson, MO 65616
Attn: President

<u>If to the Sub-Manager:</u>
Trading Places International
23807 Aliso Creek Rd., Suite 100
Laguna Niguel, CA 92677
Attn: President

The addresses and addressees for the purpose of this paragraph may be changed by giving written notice of such change in the manner herein provided for giving notice. Unless and until such written notice is received, the last address, fax number, and addressee stated by written notice, or as provided herein if no written notice of change has been received, shall be deemed to continue in effect for all purposes hereunder.

8. **Waiver.** The waiver or failure to enforce any provision of this agreement shall not operate as a waiver of any future breach of such provision or of any other provision hereof.

9. **Merger.** All understandings and agreements heretofore had between the parties respecting the employment contemplated by this agreement are merged by this agreement which fully and completely expresses the agreement of the parties. There are no agreements except as specifically set forth in this agreement or to be set forth in the instruments or other documents delivered or to be delivered hereunder.

10. **Amendments.** No change in, addition to, or waiver or termination of, this agreement or any part thereof shall be valid unless in writing and signed by or on behalf of each of the parties hereto.

11. **Paragraph Headings.** The paragraph headings herein contained are for the purposes of identification only and shall not be considered in construing this agreement.

12. **Successors and Assigns.** All of the terms and provisions of this agreement shall be binding upon and inure to the benefit of, and be enforceable by, the parties and each of their respective successors and assigns. The obligations or duties of Sub-Manager may be assigned only with the express written consent of Summerwinds.

**EXHIBIT A**

13. **Attorney's Fees.** In the event any controversy, claim or dispute between the parties hereto arising out of or relating to this agreement or the breach thereof results in arbitration or litigation, the prevailing party in such proceedings shall be entitled to recover from the losing party reasonable expenses, attorney's fees and costs.

14. **Severability.** Every provision of this agreement is intended to be several. If any term or provision hereof is illegal or invalid for any reason whatsoever, such illegality shall not affect the validity of the remaining provisions within the agreement.

15. **Choice of Law.** This agreement is made pursuant to and shall be construed in accordance with and governed by the laws of the State of California.

16. **Indemnification.**

    (a) **The Association's Duty to Indemnify the Sub-Manager.** The Association shall indemnify, hold harmless and defend, at its sole cost and expense, the Sub-Manager and its employees, agents, officers, directors, successors and assigns against liability for any and all claims, costs, suits and damages, including attorney's and accountant's fees arising directly or indirectly out of or in connection with the management and operation of the Property, and from liability for injuries suffered by any person relating to the Property. The Association's duty to indemnify the Sub-Manager shall not extend to any acts of the Sub-Manager determined to be as a result of the Sub-Manager's gross negligence or willful misconduct. This covenant to indemnify, hold harmless and defend the Sub-Manager relates to any acts or omissions, statements or representations made by the Sub-Manager in the performance and/or nonperformance of the Sub-Manager's duties and relating to all contractual liabilities which may be alleged or imposed upon the Sub-Manager. The Sub-Manager need not have first paid any such claim or liability in order to be so indemnified.

    (b) **The Sub-Manager's Duty to Indemnify the Association.** The Sub-Manager shall indemnify the Association and its directors, officers, agents, and employees harmless against any and all claims, suits, costs, and damages including attorneys' fees arising out of the gross negligence or willful misconduct of the Sub-Manager or its employees in connection with the management and operation of the Association, or the performance of this Agreement. The indemnity shall extend but not be limited to the claims brought by the Sub-Manager's employees against the Sub-Manager in connection with any employment relationship between those parties, which arise from claims of illegal or prohibited actions in hiring, supervising, promotion or discipline of such employees, unless such acts of the Sub-Manager are done at the direction and upon authorization of the Association, its agents, offices or directors.

**EXHIBIT A**

IN WITNESS WHEREOF, the parties hereto have executed this agreement as of the date first above written.

| "Summerwinds" | "Sub-Manager" |
|---|---|
| SUMMERWINDS RESORT SERVICES, LLC | TRADING PLACES INTERNATIONAL, INC. |
| By: _[signature]_ | By: _[signature]_ |
| Title: _[illegible]_ | Title: _EXEC VICE PRESIDENT_ |

**EXHIBIT A**

## ACKNOWLEDGEMENT AND CONSENT

As evidenced by its signature below, Stormy Point Village—Phase III Property Owners Association, Inc. does hereby acknowledge and consent to the terms and conditions of the Management Agreement. To the extent that the management fees payable to Sub-Manager in the above agreement are in excess of those management fees otherwise allowed in the Management Agreement, then the Association hereby agrees to immediately take all steps necessary in order to increase all maintenance fee assessments in order to assure the prompt, proper and timely funding of all financial obligations owed by Sub-Manager hereunder.

STORMY POINT VILLAGE—PHASE III PROPERTY OWNERS ASSOCIATION, INC.

BY: _____

TITLE: _____

## DEVELOPER SUBSIDY AGREEMENT

As evidenced by its signature below, VPG Partners VI, LLC does hereby guaranty the payment and performance of all financial and other obligations of Summerwinds and the Association that are owed to Sub-Manager and that are expressly set forth in the above-referenced document, and agrees to pay such financial obligations to the extent that such are not otherwise funded through the collection of Association maintenance fees and related revenues. Capitalized terms not otherwise defined herein shall have those meanings assigned to them in the agreement to which this acknowledgement is attached.

VPG PARTNERS VI, LLC

BY: _____

TITLE: _____

**EXHIBIT A**